# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| GSC Construction, Inc. | )  ASBCA No. 59046 |
| | ) |
| Under Contract No. W9126G-11-D-0061 | ) |

APPEARANCE FOR THE APPELLANT: James S. DelSordo, Esq.
Argus Legal, LLC
Manassas, VA

APPEARANCES FOR THE GOVERNMENT: Thomas H. Gourlay, Jr., Esq.
Engineer Chief Trial Attorney
Ronald J. Goodeyon, Esq.
Jason R. Chester, Esq.
Engineer Trial Attorneys
U.S. Army Engineer District, Tulsa

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL
## ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The government contracted with appellant to construct a facility at Fort Sill, Oklahoma. Appellant seeks additional compensation for certain utilities work. The government moves for summary judgment. We deny the motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The following material facts are undisputed:

1. On 15 September 2011, the Department of the Army (government) awarded GSC Construction, Inc. (appellant) Task Order 0001 pursuant to Contract No. W9126G-11-D-0061, an indefinite delivery, indefinite quantity contract (R4, tab 4(p) at 3377).

2. The task order amount was $11,951,460 (R4, tab 4(p) at 3377).

3. The task order provides that appellant would "[c]omplete the Design and Construction of the Central Issue Facility" (a warehouse) at Fort Sill, Oklahoma (R4, tab 4(p) at 3374, 3380, 3383).

4. The Statement of Work (SOW) § 6.4.6.1.(c) provides:

> Water mains are shown on the drawings at Appendix J....
> The Infrastructure Contractor will provide the potable
> water service between the main line to the 5-foot line of
> the building. Provide potable water service from the 5-foot
> line to the facility and within the building.... The
> Government will provide primary or main water pipe
> distribution....

(R4, tab 4(p) at 3474)

5. Section 6.4.6.1.(d) provides:

> The Infrastructure Contractor will design and construct the
> sanitary sewer service line between the sanitary sewer
> main to 5 feet from the building....

(R4, tab 4(p) at 3474)

6. Section 6.3.1.5. provides "infrastructure drawings are provided as 'for information only' reference" (R4, tab 4(p) at 3472).

7. Appendix EE, "Infrastructure Drawings," includes a drawing entitled "OVERALL PROJECT CONSTRUCTION ACCESS" (R4, tab 4(p) at 4090, 4093).[1] Note 4, "WATER SUPPLY AND DISTRIBUTION," of the drawing states:

> MULTIPLE EXISTING WATER LINES WILL NEED
> TO BE REROUTED AS PART OF THIS PROJECT.
> THERE IS AN EXISTING 12" TRANSITE AND 24"
> CAST IRON WATER LINE RUNNING THRU THE
> FOOTPRINT OF THE NEW FACILITY. THE 12" LINE
> WILL BE REMOVED AND REROUTED AROUND
> THE SOUTH SIDE OF THE FACILITY. AN 8" LOOP
> WILL BE CONNECTED TO THIS LINE TO SERVE
> THE FACILITY WATER DEMANDS. THE EXISTING
> 24" CAST IRON WATER LINE IS ABANDONED....
> THE PORTION OF THIS LINE UNDER THE
> FOOTPRINT OF THE NEW FACILITY WILL BE
> REMOVED. AN EXISTING 24" WATER LINE UNDER

---

[1] Although the government points to pre-contract drawings, our drawing references are to the versions of those drawings that are appended to the contract.

2

THE NEW POV PARKING LOTS WILL ALSO NEED
TO [BE] REMOVED.

(R4, tab 4(p) at 4093)

8. The Overall Project Construction Access drawing, at note 5, "SANITARY SEWER," states:

THE NEW MAINS WILL BE 8" WITH THE NEW
SERVICE LINES 6". THE NEW MAINS AND
SERVICE LINES WILL HAVE PRE-CAST MANHOLES
INSTALLED TO ALLOW FOR THE CONNECTION OF
THE NEW FACILITY.

(R4, tab 4(p) at 4093)

9. Appendix EE includes a drawing entitled "UTILITY PLAN" (R4, tab 4(p) at 4102). Note 2 of that drawing states that "CONTRACTOR WILL PROVIDE ANY SANITARY SEWER ELEMENT REQUIRED OUTSIDE 5' OF THE BUILDING INCLUDING A CLEANOUT OR MANHOLE AND CAP FOR FUTURE CONNECTION" (*id.*).

10. The Utility Plan drawing, at note 4, states that "CONTRACTOR WILL PROVIDE THE PIV AND ROUTE FIRE WATERLINE (SEPARATE FROM THE DOMESTIC SUPPLY). CONTRACTOR WILL TAKE FIRE WATER LINE AND ROUTE WITHIN THE BUILDING." (R4, tab 4(p) at 4102)

11. On 19 February 2013, Bilateral Modification No. A00002 was issued, increasing the contract amount by $47,951, including for appellant to "provide and install approximately 150 LF of 8" Fire Protection water line, extending from the water line to a point 5 ft from the building" (R4, tab 4(s) at 4781).[2]

12. On 14 March 2013, appellant presented to the contracting officer (CO) a certified claim for $826,355 for five categories of work that appellant categorized as "Natural Gas, Water Mains, Sanitary Sewer, Electrical, and Communications" (R4, tab 2 at 1, 6). The water main component of the claim sought compensation for moving what appellant called "the 24" primary or main water line" from the 5-foot line to the building (R4, tab 2 at 4).

---

[2] Although the Rule 4 file copy of the modification indicates that appellant was required to sign the modification, the copy bears the signature of neither party.

13. On 18 June 2013, appellant revised its claim to add a request for a contract modification for "a (112) day time extension with extended overhead in the amount of $162,309.28" (R4, tab 3 at 2).

14. In a 22 August 2013 final decision, the CO granted appellant's claim in part, and denied the claim in part (R4, tab 1 at 13). The CO found merit for $442,119.63 for "design and installation costs for the electrical distribution line and the site communication line" (id.). The CO denied appellant's claim for $546,544.65 for "[t]he remaining site utilities (12" water line, relocate 24" water line, 10" fire loop, sanitary sewer line, and site lighting)" (id.).

15. Appellant received the CO's decision on 30 August 2013, and timely filed this appeal on 26 November 2013.

## DECISION

*Introduction*

The government requests summary judgment in its favor on the entirety of the appeal. Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Appellant seeks compensation for alleged government-directed changes to the contract work relating to four issues: (1) a sanitary sewer line; (2) a 12" water line; (3) the relocation of a 24" water line; and (4) a 10" fire loop (amended compl. ¶¶ 14, 26; R4, tab 1 at 13).[3] The Board denies the motion.

*Sanitary Sewer Line*

With respect to the sanitary sewer line claim, the government does not respond to appellant's contention that the issue is "who was to provide the installation of the sanitary sewer main" (app. resp. at 12), and we take that silence as agreement. Consequently, we reject the government's reliance upon SOW § 6.4.6.1.(d) (gov't mot. at 3, 10). That section did not require appellant to install a sewer main; it required appellant to "design

---

[3] It is unclear what, if anything, happened to the "Natural Gas" category that appellant referenced in its claim to the CO (SOF ¶ 12). The CO denied five categories of claims amounting to $546,544.65 (none of which appears to relate to natural gas (SOF ¶ 14)), and appellant's amended complaint seeks only that amount (amended compl. ¶¶ 14, 26). In any event, the government's motion does not expressly address any natural gas claim; therefore, nor do we. Moreover, in a letter to the Board dated 20 August 2014, appellant confirmed that the appeal does not include any claim for compensation regarding "site lighting."

4

and construct the sanitary sewer service line *between the sanitary sewer main* to 5 feet from the building"[4] (SOF ¶ 5) (emphasis added).

The government also relies upon the Overall Project Construction Access drawing, but that drawing, although it refers to "NEW [SEWER] MAINS," does not state that the contractor would install those mains (SOF ¶ 8).[5] Although the Utility Plan drawing notes that the contractor "WILL PROVIDE ANY SANITARY SEWER ELEMENT REQUIRED OUTSIDE 5' OF THE BUILDING INCLUDING A CLEANOUT OR MANHOLE AND CAP FOR FUTURE CONNECTION" (SOF ¶ 9), the government does not demonstrate that a sewer main is a "SANITARY SEWER ELEMENT" within the meaning of that note, particularly where the note specifies "A CLEANOUT OR MANHOLE AND CAP FOR FUTURE CONNECTION" as examples. Consequently, the government does not demonstrate that, with respect to the sanitary sewer line, there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Accordingly, with respect to the sanitary sewer line claim, the motion is denied.

*Water Lines*

With respect to the water line claims (that is, the claims for the 12" water line, 24" water line, and 10" fire loop), the government does not demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. The government relies upon SOW § 6.4.6.1.(c) (gov't mot. at 3, 9), which required appellant to "provide the potable water service between the main line to the 5-foot line of the building," but the same section required the government to "provide primary or main water pipe distribution" (SOF ¶ 4). The government does not demonstrate which, if any, of the lines in question were lines within 5 feet of the building, as opposed to lines for "primary or main water pipe distribution."

In addition, although the government relies upon drawing notes (gov't mot. at 9-11), it cites no evidence that establishes which water lines at issue are those referenced in those notes. For example, the government recites a portion of note 4 of the Overall Project Construction Access drawing (gov't mot. at 3, ¶ 5). That note references at least four water lines, two of which are 24" lines: an abandoned 24" cast iron line, and "AN EXISTING 24" WATER LINE UNDER THE NEW POV PARKING LOTS WILL ALSO NEED TO [BE] REMOVED" (SOF ¶ 7). However, the government recites only

---

[4] Appellant does not dispute that pursuant to Amendment No. 7, which replaced all references in § 6.4.6.1. to "Infrastructure Contractor" with "D/B Contractor" (R4, tab 4(h) at 3151), the term "Infrastructure Contractor" in § 6.4.6.1.(d) refers to appellant (app. resp. at 11).

[5] Although § 6.3.1.5. provides that "infrastructure drawings are provided as 'for information only' reference" (SOF ¶ 6), we need not decide now what that language means.

the portion of the note referencing the cast iron line; it omits the "EXISTING 24" WATER LINE" language (gov't mot. at 3, ¶ 5). Nevertheless, the government does not cite any evidence that establishes that the 24" line that is the subject of appellant's claim is the cast iron line referenced in the note.

Even if the government had recited the omitted language, the note uses the term "24" WATER LINE," whereas appellant, tracking the language of section 6.4.6.1.(c) that imposes obligations upon the government, refers to "the 24 inch *primary or main* water line" (app. resp. at 11) (emphasis added). Indeed, the government does not reply directly to appellant's contention that, in its view, "[t]he problem is that [appellant] never received a compensation for relocating the 24 inch primary or main water line" (*id.*).

The government also recites drawing note references to an "8" loop" and a "fire waterline" (gov't mot. at 3, ¶¶ 5-6), but does not establish as undisputed fact that appellant's 10" fire loop claim concerns those features. Finally, the government does not explain whether "THE 12" LINE" referenced in a drawing note is the subject of appellant's 12" line claim; even so, that note states that "THE 12" LINE WILL BE REMOVED AND REROUTED" without stating who would be responsible for that work (SOF ¶ 7). If the government's position is that the contract imposed upon appellant the obligation to perform all water line work within the site, its motion does not establish that obligation.

In short, the government has not met the standard for summary judgment upon the water line claims. This may be a case in which evidence of trade practice and custom plays an important role in contract interpretation, to explain the meaning of technical terms in contract provisions and on contract drawings. *See generally Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999). The Board might also benefit from further, detailed evidence from those with personal knowledge of the contract work, or from stipulated facts. Because the government contends that it intended that the work would comply with the contract drawings (gov't reply at 1), we note that the subjective, unexpressed intent of one of the parties is irrelevant to contract interpretation. *Elam Woods Constr. Co.*, ASBCA No. 52448, 01-1 BCA ¶ 31,305 at 154,547.

## CONCLUSION

The Board denies the motion for summary judgment. The parties shall confer and, within 21 days of the date of this decision, file a jointly-proposed schedule for further proceedings.

Dated: 2 September 2014

TIMOTHY J. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59046, Appeal of GSC Construction, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7