# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| Maersk Line, Limited | ) | ASBCA Nos. 59791, 59792 |
| | ) | |
| Under Contract Nos. N00033-06-C-3305 | ) | |
| N00033-06-C-3306 | ) | |

APPEARANCES FOR THE APPELLANT:     Robert E. Korroch, Esq.
    Cameron M. Rountree, Esq.
    William A. Wozniak, Esq.
     Williams Mullen
     Newport News, VA

APPEARANCES FOR THE GOVERNMENT:     Ronald J. Borro, Esq.
     Navy Chief Trial Attorney
    Tricia A. Nicewicz, Esq.
    Allison M. McDade, Esq. .
    Gordon D. Ivins, Esq.
     Trial Attorneys
     Military Sealift Command
     Norfolk, VA

## OPINION BY ADMINISTRATIVE JUDGE YOUNGER
## ON THE GOVERNMENT'S MOTION AND APPELLANT'S CROSS-MOTION
## FOR SUMMARY JUDGMENT AND OTHER MOTIONS

The parties have filed cross-motions for summary judgment, as well as three other motions, in these consolidated appeals. Appellant Maersk Line, Limited (Maersk) seeks vessel conversion costs said to result from the convenience terminations of two dry cargo time charters. Under Contract No. N00033-06-C-3305, the Military Sealift Command (MSC) chartered the services of the M/V *LTC John U.D. Page* (M/V *Page*). Under Contract No. N00033-06-C-3306, MSC chartered the services of the M/V *SSG Edward A. Carter, Jr.* (M/V *Carter*). Both contracts were follow-on contracts. MSC terminated both contracts for convenience. We deny the cross-motions for summary judgment, as well as the three other motions.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

A. *The 2001 Contracts*

1. Effective 22 May 2000, MSC awarded Contract No. N00033-00-C-3201, to Maersk for the dry cargo time charter for the M/V *Page* (ASBCA No. 59791 (59791), R4, tab A-1 at 1-2). In addition, effective 22 May 2000, MSC awarded Maersk Contract No. N00033-00-C-3202 for the dry cargo time charter for the M/V *Carter* (ASBCA No. 59792 (59792), R4, tab A-1 at 1-2) (the 2001 contracts). "Under a time charter, the owner remains responsible for maintenance and crewing of the vessel," *Bos'n Towing and Salvage Company*, ASBCA No. 41357, 92-2 BCA ¶ 24,864 at 124,026, while the charterer may employ the vessel for specified purposes.

2. The 2001 contracts were both for terms of 1,795 days (59791, R4, tab A-1 at 2; 59792, R4, tab A-1 at 2). Both contracts were for the transportation and storage of ammunition in support of the Army's Prepositioning Program (59791, R4, tab B-42 at 142).

3. It is undisputed that, in the interval between contract award and delivery of the vessels under the 2001 contracts, Maersk incurred costs to modify both the M/V *Page* and the M/V *Carter*. In order to meet the requirements of the 2001 contracts, Maersk installed specialized cranes, air conditioning and dehumidifier systems for the cargo holds, and cargo hold sprinkler systems to make both vessels suitable for the transportation and storage of ammunition. (59791, R4, tab D-66 at 525; 59792, R4, tab D-60 at 529)

B. *The 2006 Contracts*

4. Following completion of the 2001 contracts, MSC awarded the follow-on contracts at issue here. Effective 1 February 2006, MSC awarded Contract No. N00033-06-C-3305 to Maersk for the dry time charter of the M/V *Page*, and, effective 8 December 2005, for the M/V *Carter* (collectively, the 2006 contracts) (59791, R4, tab C-44 at 343; 59792, R4, tab C-29 at 300).

5. The 2006 contracts contained various standard clauses, including Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS–COMMERCIAL ITEMS (OCT 2003). Each contract's Termination for the Government's Convenience clause was separately set out and was identical to that appearing in FAR 52.212-4(l) (59791, R4, tab C-44 at 372; 59792, R4, tab C-29 at 333).

6. The 2006 contracts contained identical Cancellation Fee clauses, which provided:

The contractor and Government agree the purpose of this clause is to induce the contractor to offer to provide and to provide the required services when the contractor otherwise would not offer to provide them because of the contractor's inability to recover its out-of-pocket costs in the event the Government does not exercise an option to extend the term of the contract or terminates the contract for the convenience of the Government.

In the event the Government does not exercise an option to extend the term of the contract...for convenience, the contractor shall be entitled to not-to-exceed cancellation costs subject to the following conditions....

"Cancellation costs" means, and only means, costs specifically identified by the contractor in its proposal and actually incurred by the contractor between contract award and vessel delivery to the Government including, and limited to, the following categories of costs: costs incurred by the contractor for vessel acquisition, reflagging costs and modification, or conversion costs, and only to the extent such modification, or conversion costs were incurred in order for the vessel to meet contract requirements....

....

The cancellation costs must be reasonable, allowable, and allocable to the contract. The Government will not be obligated in any event to reimburse the contractor for the specified categories of cancellation costs...regardless of anything to the contrary in the clause entitled "Termination for Convenience of the Government." The contractor agrees that payment of the specified cancellation costs according to the schedule above for any contract period fully compensates the contractor for the specified categories of cancellation costs. The contractor waives any right it may have to claim any additional costs for the specified categories of cancellation costs....

(59791, R4, tab B-43 at 167; 59792, R4, tab C-29 at 326-27)

3

7. MSC redelivered the M/V *Page* to Maersk on 22 June 2010, which was before expiration of the contract (59791, R4, tab C-62 at 500-01).

8. MSC also redelivered the M/V *Carter* to Maersk early (59792, R4, tab C-57 at 497-98).

9. After negotiations regarding Maersk's termination settlement proposal (TSP), the parties reached agreement on outstanding issues, other than hull depreciation costs under each contract, as to which they reached an impasse (59791, supp. R4, tab 65G at 604; 59792, R4, tab 58 at 506).

10. By date of 24 September 2013, Maersk submitted its certified claim to the contracting officer regarding both contracts. Maersk asserted that the claim was for

> (i) [U]nrecovered costs, resulting from the early termination of [the contract], in the amount of $480,000 incurred for the modification of the M/V PAGE to comply with applicable contract requirements (hereinafter the "Hull Depreciation Costs"), and (ii) unrecovered costs, resulting from the early termination of [the contract], in the amount of $242,500 incurred for the modification of the M/V CARTER to comply with applicable contract requirements.

Maersk explained that:

> The claim...with respect to reimbursement of Hull Depreciation Costs for the M/V PAGE is equally applicable to unrecovered vessel modification costs for the M/V CARTER, as the vessels are similarly situated with respect to the incurred modification costs, the depreciation schedule...as well as to the application and effect of the relevant contract clauses....

(59791, R4, tab D-66 at 524, 532-33) Maersk employed the term "Hull Depreciation Costs" on all but one page of its claim to refer to the costs that it sought (*id.* at 524-32).

11. By date of 17 October 2014, the contracting officer rendered separate final decisions denying Maersk's claims for reimbursement (59791, R4, tab D-70; 59792, R4, tab E-64). Thereafter, by date of 13 January 2015, Maersk filed a timely notice of appeal in each of these appeals. By order dated 26 May 2015, we granted the parties' joint motion to consolidate both appeals.

12. In its first amended complaint in ASBCA No. 59791, Maersk alleges in Count I that its "unrecovered hull depreciation is a cost that has resulted from the termination [of the contract for the M/V *Page*], which [Maersk] is entitled to recover from MSC" as a breach of the Termination for Convenience clause (compl. ¶¶ 33, 35). Maersk alleges that "[b]ased on 192 days remaining on the Contract..., the actual 'hull depreciation' amount reflects the amortized cost of $2,500 per day for 192 days ($480,000)" (*id.* ¶ 25).

13. In its first amended complaint in ASBCA No. 59792, Maersk makes substantially identical allegations in Count I regarding entitlement to "unrecovered hull depreciation" costs as those made regarding the M/V *Page* (compl. ¶¶ 33, 35). Maersk alleges that "[b]ased on 97 days remaining on the Contract, the actual 'hull depreciation' amount reflects the amortized cost of $2,500 per day for 97 days ($242,500)" (*id.* ¶ 25).

## DECISION

### 1. *MSC's Alternative Motion to Dismiss the Amended Complaints for Lack of Jurisdiction*

We first address MSC's alternative motion to dismiss Maersk's amended complaints in each appeal because it is potentially dispositive of the remaining motions. In its motion to dismiss, MSC asserts that Maersk failed to submit its claim for vessel depreciation costs to the contracting officer (Government's Motions for Summary Judgment, Or in the Alternative, to Dismiss Appellant's Amended Complaint for Lack of Jurisdiction (gov't mot. at 13-15)). MSC stresses that the claims before the contracting officer were for the "'conversion costs incurred from the first ammo contract of [these] vessel[s], including installation of cranes, AC/DH systems, [c]argo [h]old sprinkler systems, etc.'" (*id.* at 14). By contrast, MSC emphasizes, the claims asserted in the first amended complaints are for depreciation of vessel acquisition costs (*id.* at 14-15).

In opposition, Maersk insists that the claims asserted in the amended complaints are based on the same operative facts as those presented to the contracting officer (Appellant's Motion to Dismiss Respondent's Motion for Summary Judgment, Deny Respondent's Motion for Dismissal, and Compel Respondent to Respond to Appellant's Discovery Requests (app. opp'n at 6)). Maersk acknowledges that the Board lacks jurisdiction over claims not presented to the contracting officer, but asserts that, its claims defined the term "Hull Depreciation Costs" as "unrecovered costs incurred for the modification of the M/V PAGE and the M/V CARTER" (*id.*). In its amended complaints, Maersk states, it clarifies "the distinction between the cost of modifying or converting the vessels for service and the cost of acquiring the vessel[s]" (*id.* at 6-7). Maersk explains that the amounts sought in both complaints are identical,

and that its legal position regarding the Cancellation Fee clauses remains the same, as does its invocation of the early termination of the contracts as the causal event for cost incurrence (*id.* at 7). In addition, Maersk insists that MSC's contention that claims stemming from the 2001 contracts should be dismissed because the time bar of the statute of limitations is not jurisdictional and is properly raised as an affirmative defense subject to a determination in a merits proceeding (*id.*).

We conclude that MSC's alternative motion to dismiss the amended complaints must be denied. In *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003), the court of appeals held that the same claim decided by the contracting officer must be presented to the court; claims do "not require rigid adherence to the exact language or structure of the original...claim [when they] arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery." We held in *American General Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,639 that a claimant "is free to change the legal theory...from what was described in the claim...if the action continues to arise from the same operative facts that were relied upon in the [claim], and essentially seeks the same relief."

Applying these standards to the present motion, MSC fails to demonstrate a decisive difference in the operative facts between the claim as asserted to the contracting officer and in the first amended complaints. Both in the claim and in its amended pleadings, Maersk points to the early convenience terminations of the contracts as the precipitating event for its loss of the unrecovered "Hull Depreciation Costs" that it seeks to recover (statements 9, 11, 12). In addition, Maersk seeks the same relief–recovery of $480,000 under the M/V *Page* contract, and $242,500 under the M/V *Carter* contract–in both the claim and the first amended complaints (*id.*). Finally, with respect to MSC's assertions that there are qualitative differences between the claim submitted to the contracting officer and that alleged in the first amended complaints, it is to be noted that Maersk characterizes the costs that it seeks as "Hull Depreciation Costs" on almost every page of the claim (statement 9). Whether or not "hull depreciation" is "simply a naming convention coined by Appellant" (gov't mot. at 9), Maersk so characterized the costs that it sought on all but one page of the claim (statement 9). In any event, "assert[ing] differing legal theories for...recovery" does not defeat our jurisdiction. *Scott Timber*, 333 F.3d at 1365.

### 2. *MSC's Motion for Summary Judgment*

In moving for summary judgment, MSC focuses on the nature of Maersk's claim and urges that it is barred by the Cancellation Fee clause in each of the 2006 contracts (*see* statement 6). MSC stresses that "the costs at issue are those associated with the vessels' modification to comply with the 2001 Contract requirements. There are no facts in the record that support the disputed costs being 'depreciation of vessel

acquisition.'" (Gov't mot. at 10) MSC insists that Maersk incurred conversion costs—that is, for the costs of converting the vessels to ammunition ships by installing items such as specialized cranes, air conditioning and dehumidifier systems for the cargo holds, and cargo hold sprinkler systems, under the 2001 contracts (*id*. at 8, 10). MSC further argues that the 2006 contracts, however, did not include conversion costs, and the Cancellation Fee clauses in those contracts (*see* statement 6) provide that the cancellation fees themselves cover conversion costs and preclude recovery of any additional costs (gov't mot. at 8). Consistent with its position that Maersk's claims "arise from its admitted costs of modifying [the vessels] to meet 2001 Contracts['] requirement specifications" (*id*. at 8), MSC therefore urges that the contracting officer properly denied Maersk's claim under the 2006 contracts.

In opposition to the motion, Maersk asserts that MSC has wrongly framed the issue. Maersk argues that the issue is whether it is entitled to "its depreciation of the costs of its *acquisition* of the vessels that was not recovered because of MSC's early redelivery and termination of the 2006 Contracts for its convenience" (Appellant's Response to Government's Motions for Summary Judgment and Appellant's Cross-Motion for Summary Judgment (app. reply at 7)). Maersk emphasizes that the issue is "squarely presented" in its amended complaints in both appeals (*id*.).

Our evaluation of the parties' summary judgment motions is guided by the familiar canon that summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "Our task is not to resolve factual disputes, but to ascertain whether material disputes of fact–triable issues–are present." *Conner Bros. Construction Co.*, ASBCA No. 54109, 04-2 BCA ¶ 32,784 at 162,143, *aff'd, Conner Bros. Construction Co. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008) (quoting *John C. Grimberg Co.*, ASBCA No. 51693, 99-2 BCA ¶ 30,572 at 150,969). In evaluating a summary judgment motion, we draw justifiable inferences in favor of the party opposing the motion. However, once the movant meets its burden of showing the lack of any genuine issue of material fact, the non-moving party must set out specific facts showing the existence of a genuine issue of material fact; conclusory statements or bare assertions are insufficient. *Mingus Constructors*, 812 F.2d at 1390-91.

With respect to cross-motions, such as those before us, "The fact that both parties have moved for summary judgment does not mean that [we] must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors*, 812 F.2d at 1391. With cross-motions, we "must evaluate each party's motion on its own merits." *BMY, A Division of Harsco Corp.*, ASBCA No. 38172, 93-2 BCA ¶ 25,704 at 127,868.

7

We conclude that MSC's motion should be denied. We reach this conclusion for two principal reasons. First, there are disputed issues of material fact surrounding the characterization of the costs at issue. Thus, Maersk tells us that the costs that it seeks to recover are "depreciation of the costs of its *acquisition* of the vessels that was not recovered because of MSC's early redelivery and termination of the 2006 Contracts" (app. reply at 7). By contrast, MSC asserts that the costs constitute "those associated with the vessels' modification to comply with the 2001 Contract requirements" (gov't mot. at 10). We cannot resolve the parties' dueling characterizations of these costs on summary judgment. These arguments present a triable issue. *See Conner Bros.*, 04-2 BCA ¶ 32,784 at 162,143, *aff'd, Conner Bros.*, 550 F.3d 1368.

Second, resolution of broader issues in these appeals would be aided by extrinsic evidence. We have elsewhere denied summary judgment when the parties contest the meaning of contract terms, recognizing that "material disputes of fact...may arise concerning the meaning intended by the parties." *Aegis Defence Services Ltd.*, ASBCA No. 59082, 15-1 BCA ¶ 35,811 at 175,138. Stated otherwise, "When the meaning of a contract and the parties' intentions are both relevant and in dispute, there are mixed questions of fact and law that pose triable issues precluding summary judgment." *AshBritt, Inc.*, ASBCA Nos. 56145, 56250, 09-2 BCA ¶ 34,300 at 169,434.

### 3. Maersk's Cross-Motion for Summary Judgment

The syllogism underlying Maersk's cross-motion is as follows. First, both FAR 12.403 and FAR 49.201(a), read together, set forth the principle of fairness for convenience termination settlements. Second, Maersk is entitled to recover under the Termination for Convenience clause "reasonable charges" that have resulted from the termination, which includes charges incurred in anticipation of contract performance. Third, these charges include vessel depreciation, which Maersk has demonstrated with records submitted with its cross-motion. (App. reply at 15) In opposition, MSC substantially reiterates the arguments it advances in its own motion for summary judgment (Government's Response to Appellant's Motion for Summary Judgment (gov't reply at 1-3)).

As indicated, we evaluate Maersk's cross-motion on its own merits. *BMY*, 93-2 BCA ¶ 25,704 at 127,868. We deny it for the same reasons that we denied MSC's motion for summary judgment.

### 4. Maersk's Motion to Dismiss MSC's Motion for Summary Judgment

Maersk labelled its initial opposition to MSC's motion for summary judgment as a motion to dismiss the latter motion. Maersk argues that MSC's motion for

8

summary judgment should be denied for MSC's alleged "abuse of the process" of litigation (app. opp'n at 5). Maersk's point is that it is abusive for MSC to move for summary judgment when it has "deliberately and calculatedly produced nothing in response to [Maersk's] discovery requests" (*id.*).

We deny Maersk's motion to dismiss MSC's motion. Maersk has not filed a motion to compel discovery responses and a motion to dismiss a summary judgment motion is procedurally inappropriate. In any event, in both its opposition to MSC's motion for summary judgment, and in its cross-motion for summary judgment, Maersk has demonstrated that it has not suffered any discernable prejudice from MSC's motion practice.

*5. Maersk's Motion to Compel Discovery*

Maersk also moves to compel discovery regarding various interrogatories and document production requests. After Maersk filed its motion, however, we stayed further discovery pending disposition of the cross-motions for summary judgment.

With its cross-motion, Maersk has informed us that it "withdraws its Motion to Compel" (app. reply at 1 n.1). Given Maersk's withdrawal, we dismiss Maersk's motion to compel as moot.

## CONCLUSION

MSC's alternative motion to dismiss Maersk's first amended complaints for lack of jurisdiction is denied. MSC's motion for summary judgment is denied. Maersk's cross-motion for summary judgment is denied. Maersk's motion to dismiss MSC's motion for summary judgment is denied. Maersk's motion to compel discovery is dismissed as moot.

Dated: 13 June 2016

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

9

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59791, 59792, Appeals of Maersk Line Limited, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10