ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| DCX-CHOL Enterprises, Inc. | ) ASBCA No. 58742 |
| | ) |
| Under Contract No. N00104-05-C-FA80 | ) |

APPEARANCE FOR THE APPELLANT:        James S. DelSordo, Esq.
                                                                        Argus Legal, LLC
                                                                        Manassas, VA

APPEARANCES FOR THE GOVERNMENT:        Ronald J. Borro, Esq.
                                                                        Navy Chief Trial Attorney
                                                                        Abram D. Burnett, III, Esq.
                                                                        Assistant Counsel
                                                                        NAVSUP Weapon Systems Support
                                                                        Mechanicsburg, PA

## OPINION BY ADMINISTRATIVE JUDGE HARTMAN
## ON APPELLANT'S MOTION FOR SUMMARY JUDGMENT

Appellant seeks conversion of the termination of its contract for default to a termination for the convenience of the government. Appellant asserts that it is entitled to summary judgment because the Department of the Navy (Navy) waived the delivery schedule for its contract when it failed to deliver and continued to perform the contract in reliance on that waiver with the Navy's knowledge, thereby precluding termination of its contract for default absent establishment of a new delivery schedule. The Navy asserts that appellant has not established either of the elements necessary for a waiver and that there are questions of material fact precluding grant of appellant's motion for summary judgment.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

In September of 2005, the Navy awarded Contract No. N00104-05-C-FA80, for submarine "stuffing tubes" (also referred to as "hull penetrators") to appellant, DCX-CHOL Enterprises, Inc. (DCX) (R4, tab 4). Stuffing tubes are classified as "Level I/SUBSAFE" materials because the use of incorrect or defective material could create a high probability of failure resulting in serious personnel injury, loss of life, loss of vital shipboard systems, or loss of the ship itself (see R4, tab 2 at 57). By bilateral contract Modification No. P00020 dated 18 October 2012, the parties agreed to extend the remaining contract delivery date to 15 February 2013 (R4, tab 56).

By email dated 24 January 2013, Lea Demirovic, a Navy contract specialist located in Mechanicsburg, Pennsylvania, asked DCX for its delivery schedule for the remainder of the units under the contract (R4, tab 60 at 2). Four days later, by email dated 28 January 2013, Tom Shafer of DCX responded that "I am working on this and will get back to you later today" (*id.*). On 12 February 2013, Ms. Demirovic responded to Mr. Shafer that "I haven't received anything from you yet" and "[p]lease let me know what's the status" (*id.*). Two days later, on Thursday, 14 February 2013, one day before the specified delivery date, Mr. Shafer replied to Ms. Demirovic as follows:

> I apologize for not getting back to you but I was trying to
> get delivery answers. We are still missing components
> from our supplier for the Plasma Coating process. I have
> been told these parts should be at our facility next week. If
> the parts do come in and are acceptable, I am looking at an
> additional 4 weeks for in-house processing. I would
> estimate the delivery the week of March 25, 2013. I will
> keep you informed of our progress next week.

(*Id.* at 1) On Tuesday, 19 February 2013, the day after the President's Day holiday, Ms. Demirovic advised Mr. Shafer by email that "[y]our contract is currently delinquent" and "[i]n order to consider your extended delivery date of 03/25/13, we would need consideration." After Ms. Demirovic did not receive a response to her 19 February 2013 email within 2 days, she sent a 21 February 2013 email to both Mr. Shafer and Cory Gamberg of DCX stating again "subject contract is currently delinquent," "[y]our attention to this matter is greatly appreciated," and "[p]lease respond at your earliest convenience." (*Id.*, tab 63 at 2)

Ms. Demirovic received no response from DCX to her 21 February 2013 email during the following 12 days. The Navy's contracting officer (CO), Richard Fry, then sent DCX a "show cause" letter dated 5 March 2013 stating:

> Since you have failed to perform Contract
> No. N00104-05-C-FA80 within the time required by its
> terms, the Government is considering terminating the
> contract under the provisions for default of this contract.
> Pending a final decision in this matter, it will be necessary
> to determine whether your failure to perform arose from
> causes beyond your control and without fault or negligence
> on your part.
>
> Accordingly, you are given the opportunity to present, in
> writing, any facts bearing on the question...within 10 days
> after receipt of this notice. Your failure to present any

2

excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of the Contractor and the Government and the liabilities that may be invoked if a decision is made to terminate for default.

Any assistance given to you on this contract or any acceptance by the Government of delinquent goods or services will be solely for the purposes of mitigating damages, and **it is not the intention of the Government to condone any delinquency or to waive any rights the Government has under the contract**. [Emphasis added]

(R4, tab 61)

By letter dated 14 March 2013, Michael Jamison, vice president of DCX, responded to the CO's show cause letter as follows:

The delay on contract N00104-05-C-FA80 is due to delays that occurred during the outside processing of the hull penetrator bodies. There were two groups of parts that where [sic] sent out for the outside processing.

Group 1
Parts were sent out for Gold plating of contacts.... On January 29, 2013 the approved parts were then sent to another vendor to have the non-conductive coating applied.... These parts were received at [DCX] on February 27, 2013.

Group 2
These parts [were] a group of assemblies that [were] returned for repair due to a debonding issue that occurred on an earlier shipment of assemblies. During the rework process of these returned parts..., it was determined the non-conductive coating was being removed during the rework. These assemblies [were] sent back to the original vendor for removal of the non-conductive coating and the re-application of the non-conductive coating. The last batch of these parts were signed off by the government inspector on February 21, 2013.

To complete the manufacturing process on both Group 1 and Group 2, the...processes include wiring of the body,

3

rubber molding, electrical testing, hydro-static testing and special packaging including the "Level-1" contract data requirements.

[DCX] will ready for shipment no later than May 8, 2013. The Level 1 inspection will be notified 2 weeks prior to the ship date to make arrangements for travel.

(R4, tab 62)

After reviewing the response from DCX, Ms. Demirovic prepared a 10-page memorandum dated 11 April 2013 for Jodene R. Watkins, deputy director of the Critical Requirements Contracting Department, proposing the DCX contract be terminated for "default." Ms. Demirovic stated in her memorandum:

The contractor ha[s] continuously failed to meet the scheduled delivery dates of the First Article Test Report ("FAT report") and material. Originally, DCX failed to submit its FAT report and to get it approved before 09/18/06 and consequently missed delivery dates on 09/18/06 and on 10/17/06. On 11/14/06, a bilateral modification with consideration, P00008, was issued to extend FAT report delivery date to 11/30/06 and to extend incremental deliveries of the material with a final delivery date on 06/15/07.

On 12/01/06, the PCO sent a show cause notice to DCX because DCX failed to submit the report on time. As a new Level 1 supplier, DCX was given another opportunity and a bilateral modification with consideration, P00009 extended the FAT report delivery date to 3/1/07 and final material delivery date was extended to 12/11/07.

On 03/10/07, the FAT test report was disapproved and DCX requested to extend the FAT report delivery date. On 04/16/07, a bilateral modification with consideration, P00010 was issued to extend FAT report delivery date to 4/20/07. Material delivery dates were not extended. On 5/22/07 the FAT report was disapproved for a second time.

On 06/04/07, the PCO sent a show cause notice to DCX and DCX responded with a Request for Waiver ("RFW"). The RFW was approved and the FAT report was resubmitted. DCX missed delivery dates on 06/14/07,

4

06/28/07, 07/16/07, 08/03/07, 09/10/07, 10/05/07, 10/22/07, [and] 12/11/07 per the latest revised delivery schedule listed in Mod P00009.

In Aug 2009 the FAT report was approved and in Oct 2009, DCX started to ship units but the shipped units were rejected due to pin defects and de-bonding issues; PQDRs were issued....

....

On 10/18/12, a bilateral modification, P00020 was issued and the material delivery date was extended to 02/15/2013 for the remaining units....

...On 4/08/13, Code 8322 QA reported that at least 71 more units [supplied by DCX] may be rejected by the fleet (USS Topeka) due to de-bonding issues. Based on the information presented above and their rejection rate of approximately 45%, there is no reasonable expectation that DCX Chol will adhere to their proposed schedule [showing shipping by 8 May 2013].

I have determined that if this contract were terminated, the supplies would be available from other sources...based on the fact this this is a fully competitive item and there are five other known sources that are capable of supplying this item. Since the effective date of this contract, seven... contracts were awarded to other vendors. Six contracts have successfully delivered the material and one contract is currently in production of this item....

....

...I have considered the urgency of this item and the period of time required to obtain the item from other sources as compared to the time delivery could be obtained from the delinquent contractor. Based on the contractor's past performance on this contract, there is no confidence that the contractor will meet future deliveries or supply material that is acceptable.

.....

5

I have concluded that this termination for default will have no effect on [the] Government's acquisition program and the contractor's capability as a supplier under other contracts.

....

The contract and applicable regulations have been reviewed. Specific contractor failure and excuses for the failure have been considered. I recommend that, with the concurrence of legal counsel, this contract be terminated for default.

(R4, tab 63) Ms. Watkins reviewed the memorandum and signed off on it on 16 April 2013 (*id.* at 3). By Modification No. P00021 dated 17 April 20013, Navy CO Susan McArdle terminated Contract No. N00104-05-C-FA80 for default (R4, tab 64).

DECISION

In its summary judgment motion, DCX contends the Navy waived the delivery schedule for its contract after DCX failed to deliver on 15 February 2013, as required by Modification No. P00020, and it continued to perform the contract with the Navy's knowledge relying on that waiver. The Navy opposes the summary judgment motion on the grounds that DCX has not established any of the elements necessary for us to conclude that there was a waiver and that there are genuine issues of disputed material fact precluding a grant of summary judgment.

In *DeVito v. United States*, 413 F.2d 1147, 1153 (Ct. Cl. 1969), the United States Court of Claims held that, where the government elects to permit a delinquent contractor to continue performance past the due date, it surrenders its contractual right to terminate the contract for default if the contractor has not abandoned performance and a reasonable time has expired for the government to furnish a termination notice. The Court stated that there are two elements necessary to find a governmental election to waive default -- (1) failure to terminate within a reasonable time after the default under circumstances indicating forbearance, and (2) reliance by the contractor on the failure to terminate and continued performance of the contract by the contractor with the government's knowledge and implied or express consent. *DeVito*, 413 F.2d at 1154.

While DCX asserts that both elements necessary to establish waiver by the Navy are present here, based on the limited record before us, i.e., the Rule 4 file and several documents appended to the parties' briefs, we conclude that DCX has failed to show either of the elements necessary to conclude that there has been a waiver by the

6

Navy. DCX asserts in its motion that the "circumstance" indicating "forebearance" by the Navy is the contract specialist's 19 February 2013 email responding to a 14 February 2013 email (app. mot. at 3-4). DCX's 14 February email, which was sent one day before the 15 February delivery date and in response to repeated emails from the contract specialist inquiring about delivery, stated if "the parts do come in" and they were "acceptable," DCX was "looking at an additional 4 weeks for [its] in-house processing" with estimated "delivery the week of March 25, 2013." The 19 February email sent by the Navy contract specialist in response stated simply "[y]our contract is currently delinquent" and, for the Navy "to consider your extended delivery date of 03/25/13, [the Navy] would need consideration." There is nothing in the record before us showing that DCX ever proposed providing any consideration for an extension of the delivery date past 15 February 2013 or that the parties engaged in any discussion of extending the delivery date based on the furnishing of consideration by DCX. In sum, an email stating that a contract was delinquent and an offer of consideration was necessary for the Navy to agree to any further delay in date of delivery, by itself, cannot constitute "forebearance" when there is no evidence an offer of consideration was ever made by DCX. E.g., Switlik Parachute Co. v. United States, 573 F.2d 1228, 1233 & n.7 (Ct. Cl. 1978).

Moreover, the record reflects no other circumstances indicating forebearance by the Navy with respect to delivery after 15 February 2013. When the Navy's CO issued his 5 March 2013 show cause letter to DCX, he expressly notified DCX it had failed to perform Contract No. N00104-05-C-FA80 within the time required by its terms, the Navy was considering terminating the contract for default, DCX was being given the opportunity to present excuses for delivery failure, and, in soliciting possible excuses for delivery failure, it was "not the intention of the [Navy] to condone any delinquency [by DCX] or to waive any rights the [Navy] has under the contract." After the Navy considered DCX's response to the show cause order, including all excuses for failure to deliver, the contract specialist recommended default termination and the Navy's CO terminated the contract for default. Accordingly, we see no evidence of "circumstances indicating forebearance" by the Navy.

DCX contends it also has shown the second element necessary to establish waiver under DeVito because, at time of contract termination, the "required supplies were manufactured and ready for delivery to the [Navy]" (app. mot. at 3, 5). The only evidence DCX cites for the proposition that the supplies were manufactured and ready for delivery is the contract specialist's memorandum recommending the DCX contract be terminated for default (id.; R4, tab 63). The memorandum, however, simply notes DCX stated in its 14 March 2013 response to the show cause order that "material will be shipped" by 8 May 2013. The memorandum concludes, based on DCX's repeated prior failures to deliver over a seven-year period, the Navy lacks confidence that DCX "will meet [its proposed] future deliveries or supply material that is acceptable." Such a statement by the contract specialist does not establish that the Navy knew DCX was continuing to perform the contract or that the supplies to be delivered were "ready for

7

delivery" on date of termination. Moreover, DCX did not expressly state in its reply to the CO show cause order whether or not, at that point in time, it was continuing to "complete the [remaining] manufacturing process[es] on both Group 1 and Group 2" parts. We, therefore, see no evidentiary basis to conclude that there was continued performance of the contract by DCX "with the government's knowledge" and consent. *Switlik*, 573 F.2d at 1233-34.

The standards set forth in FED. R. CIV. P. 56 guide us in resolving a summary judgment motion. *J. W. Creech, Inc.*, ASBCA Nos. 45317, 45454, 94-1 BCA ¶ 26,459 at 131,661; *Allied Repair Service, Inc.*, ASBCA No. 26619, 82-1 BCA ¶ 15,785 at 78,162-63; Board Rule 7(c)(2). We will grant a summary judgment motion only if pleadings, depositions, interrogatory answers, and admissions on file, together with any affidavits or other evidence, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. DCX, the party here seeking summary judgment, has the burden of demonstrating both of these elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Afghanistan Trade Transportation Co.*, ASBCA No. 59782, 15-1 BCA ¶ 36,077 at 176,166. DCX has failed to show it is entitled to judgment as a matter of law and carry its burden with respect to grant of summary judgment.

CONCLUSION

Appellant's motion for summary judgment is denied.

Dated: 11 October 2016

TERRENCE S. HARTMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58742, Appeal of DCX-CHOL Enterprises, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals