91 F.3d 170
 77 A.F.T.R.2d 96-2484, 96-1 USTC P 50,314,
20 Employee Benefits Cas. 2390,
Pens. Plan Guide P 23922G
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Ernest J. CLAYTON, Gary C. Farfanick, Richard R. Reaume,
Richard C. Thrasher and George D. Wilson,
Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5151.
 United States Court of Appeals, Federal Circuit.
 June 12, 1996.
 
 Before CLEVENGER, Circuit Judge, NIES, Senior Circuit Judge, and RADER, Circuit Judge.
 RADER, Circuit Judge.
 
 
 1
 In this tax case, Ernest J. Clayton and other taxpayers (Taxpayers) appeal the United States Court of Federal Claims' decision denying them a tax refund. Because the Court of Federal Claims properly interpreted and applied the law, this court affirms.
 
 BACKGROUND
 
 2
 The Court of Federal Claims issued a thorough opinion upon which this court relies for facts. Clayton v. United States, 33 Fed. Cl. 628 (1995). Taxpayers worked for Chrysler Canada, a subsidiary of Chrysler Corporation. They are Canadian citizens and residents. Taxpayers began participating in the Chrysler Corporation Employee Stock Ownership Plan (the Plan) in January 1981. Under the Plan, Chrysler contributed shares of its common stock to participants' accounts in an Employee Stock Ownership Trust at defined intervals.
 
 
 3
 In 1985, Chrysler and the autoworkers union agreed to terminate the Plan and distribute the accumulated assets. On the distribution form, appellants elected to receive their distributions in cash rather than stock. The trustee withheld from each taxpayer an amount equal to 15% of the stock's appreciation in value from the date of contribution to the date of sale.
 
 
 4
 Taxpayers dispute their United States tax liability on the appreciated portion of the distributions. They sought a refund from the Internal Revenue Service, which it denied. Taxpayers then challenged that denial in the Court of Federal Claims. The Court of Federal Claims, in turn, concluded that the appreciated distribution payments were properly taxable in the United States.
 
 DISCUSSION
 
 5
 Taxpayers appeal the decision of the Court of Federal Claims. Resolution of this appeal turns on the proper interpretation of the tax law. As a purely legal issue, this court need not defer to the legal conclusions of the court below. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed.Cir.1987). Appellants raise three legal issues resolved by the Court of Federal Claims.
 
 
 6
 Taxpayers initially argue that they received stock, rather than cash distributions, following the termination of the Plan. The Court of Federal Claims concluded that Taxpayers received cash distributions. The trial court reasoned that the form of the transaction dictated the nature of Taxpayers' distributions. Tax law allowed cash distributions upon termination of a plan. Upon termination of their Plan, Taxpayers specifically elected on the appropriate distribution form to receive cash. Thus, as noted by the trial court, the details and mechanics of the distributions show a cash transaction. This court agrees that Taxpayers realized cash distributions upon termination of the Plan.
 
 
 7
 Taxpayers also contend their distributions do not constitute income from a United States source. In particular, Taxpayers rely on sections 652(b) and 662(b) in Subchapter J of the Internal Revenue Code (I.R.C.). These sections suggest that trust income is not taxable under section 871(a)(1)(A) because it has the same character in the beneficiary's hands as in the trustee's hands. However, as found by the trial court, Subchapter J does not apply to this income. Tax law does not permit the character of income earned by a qualified trust to pass from the trustee to the beneficiary upon distribution.
 
 
 8
 In the alternative, Taxpayers argue that the cash distributions represented compensation for services performed outside the United States. Nonresidents are taxed only on "amount[s] received from sources within the United States." I.R.C. § 871(a)(1) (1986). As the trial court found, a general trust source rule provides that to the extent distributions "represent earnings on and accretions to contributions of either the employer or the employee, they constitute income from sources within the United States." IR-Mim. 71, 1952-2 C.B. 170. This general rule remains in force despite the enactment of limited exceptions to the rule. See I.R.C. § 402(a)(4) (1960) (current version at § 402(e)(2)) (providing a pro rata exclusion from gross income for benefits paid from exempt trusts to nonresident aliens); I.R.C. § 871(f) (1966) (excluding certain annuities received by nonresident aliens if the services for which the annuities are payable were performed outside the United States); Miscellaneous Revenue Act of 1980, Pub.L. No. 96-605, 94 Stat. 3521, 3528 (1980) (amending section 871(f) to broaden the scope of the exemption). Consequently, Taxpayers distributions constitute United States source income.
 
 
 9
 Finally, Taxpayers contend that the United States-Canada Income Tax Treaty provides an exemption for their distributions. They claim that their distributions constitute remuneration for purposes of Article XV of the Treaty. Under that article, the distributions would not be taxable. Income Tax Convention, U.S.-Can., Sept. 26, 1984, art. XV, p 1, T.I.A.S. No. 11,087, at 17.
 
 
 10
 Taxpayers distributions, however, do not clearly fall within any defined category of the Treaty. Article III of the Treaty establishes that whenever the Treaty does not define a term, its meaning must come from the country imposing the tax. Under United States tax policy, remuneration does not include the earnings and accretions of qualified trust distributions to nonresident aliens. Thus, Taxpayers' distributions are not wages, salary, or compensation for services performed abroad under Article XV. Thus, the trial court correctly concluded that this article does not apply to these distributions.
 
 CONCLUSION
 
 11
 In a comprehensive opinion, the Court of Federal Claims properly addressed and resolved all of appellants' contentions. Taxpayers' distributions are properly taxable in the United States. Accordingly, this court affirms.