# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Ruby Emerald Construction Company | )  ASBCA No. 61096 |
| | ) |
| Under Contract No. W5K9FH-12-P-0028 | ) |

APPEARANCE FOR THE APPELLANT:      Mr. Bashir Ahmady
                                               Authorized Corporate Officer

APPEARANCES FOR THE GOVERNMENT:      Raymond M. Saunders, Esq.
                                               Army Chief Trial Attorney
                                             MAJ Bruce H. Robinson, JA
                                             Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE WOODROW ON THE GOVERNMENT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In November 2011, the Army entered into an arrangement with appellant for the purchase of crushed gravel. The nature of that arrangement is at issue in this appeal. The Army argues that it was a purchase order that the Army cancelled prior to acceptance, and that appellant has therefore failed to establish the existence of an actual contract. On that basis the Army moves to dismiss for failure to state a claim upon which relief can be granted. In the alternative, in the event the Board finds that a contract did exist, the Army moves for summary judgment because appellant signed a bilateral modification cancelling the contract at no cost to the Army. We possess jurisdiction to entertain this appeal under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. We deny the Army's motion to dismiss for failure to state a claim (which we have treated as a motion for summary judgment), but grant the Army's alternate motion for summary judgment.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On November 23, 2011, the Army solicited a "firm-fixed-price commercial items quotation [from appellant] under Contract No. W5K9FH-12-P-0028" for the purchase of gravel (gov't mot. at 2). Although the Rule 4 file does not contain any document identified by the Army as the solicitation (or appellant's response thereto), it does include a document identified as "Contract No. W5K9FH-12-P-0028" (contract), which consists of a two-page Standard Form (SF) 1449 with an additional 10 pages attached that include a description of the work to be performed, various contract terms and conditions and certain applicable Federal Acquisition Regulation (FAR) clauses (R4, tab 1).

2. By email dated November 23, 2011, the contracting officer notified appellant that it "has been awarded Contract [No.] W5K9FH-12-P-0028 in the amount of $1,635,700.00," and forwarded to appellant a copy of the contract. The contracting officer requested appellant to "[p]lease...review and sign blocks 30a, 30b, and 30c of the attached contract and return to me as soon as possible." The contracting officer also informed appellant that "[r]eceipt of this notification serves as the notice to proceed (NTP) for this contract" and reminded appellant that delivery was required "no later than 37 days after date of contract." (R4, tab 2 at 1-13)

3. The SF 1449 portion of the contract includes both the captioned contract number and a solicitation number. Block 6 of the SF 1449 indicates that the solicitation was issued on November 5, 2011, and block 14 identifies the method of solicitation as a request for quotation (RFQ). (R4, tab 1 at 1, tab 2 at 2)

4. Block 28 advises the contractor that it is required to sign and return the document, and states that the contractor "agrees to furnish and deliver all items set forth or otherwise identified above and on any additional sheets subject to the terms and conditions specified herein." Block 28, which is checked, also contains the notation "REF: Your Quote." (R4, tab 1 at 1, tab 2 at 2)

5. Block 29 lists an "offer" date of November 11, 2011, and includes language stating that the contractor's "offer on [the] solicitation...including any additions or changes which are set forth herein, is accepted." Block 29 is not checked. (R4, tab 1 at 1, tab 2 at 2)

6. Blocks 30a-c for the offeror/contractor's signature, name and signature date are all blank. Blocks 31a-c for the contracting officer's signature, name and signature date have all been completed, and indicate that the contracting officer signed the document on November 23, 2011. (R4, tab 1 at 1, tab 2 at 2)

7. Contract line item numbers (CLINs) 1 through 3 all require that delivery "begin within 7 days after contract award. Delivery shall be complete 37 days after contract award." CLIN 4, which addresses supplies and services necessary to perform delivery, states that delivery "shall be complete 37 days after contract award." (R4, tab 1 at 3-5, tab 2 at 4-6) CLIN 5, which deals with security, states that the contractor "must provide all Security for the transportation of all equipment, personnel and tools. The Government will not provide security or transportation of any kind for this contract." (R4, tab 1 at 6, tab 2 at 7)

8. The November 23, 2011 email to appellant also attached an award letter of the same date, which the contracting officer requested appellant to sign and return. The award letter informed appellant that it had been "selected for Contract No. W5K9FH-12-P-0028. This award is based on your quote submitted to the [Army]." It also requested that

2

appellant sign and return a copy of the award letter no later than November 25, 2011 "for Contract No. W5K9FH-12-P-0028." (R4, tab 2 at 14)

9. A memorandum for record (MFR) dated December 1, 2011, authored by the contracting officer, describes the events that took place in the week after contract award. According to this MFR, appellant "acknowledge[d] receipt with a read receipt" of the Army's November 23, 2011 email, but "never return[ed] a signed copy of [the] contract." By emails dated November 28-29, 2011, the contracting officer requested "status of contract receipt and verification of delivery dates" but received no response. On November 29, 2011, the contracting officer contacted appellant by telephone, at which time appellant "verified receipt of the contract and verified the location for delivery." (R4, tab 3 at 1)

10. The Army's copies of the November 28-29 emails were not included in the Rule 4 file. However, appellant's copy of the November 28 email does appear in the Rule 4 file, because appellant included it as an attachment when it first contacted the Army about submitting the claim underlying this appeal.

11. The November 28 email was addressed to a second Army representative with a copy to appellant. In that email, the contracting officer directed the second Army representative and appellant to coordinate with one another. Noting that the "[c]ontract was awarded on 23 November," the contracting officer reminded appellant that "[i]n accordance with the terms of the contract, you are to begin deliver[y] no later than 7 days after award of contract." Contrary to the MFR's description, the contracting officer requested appellant to "acknowledge receipt of this correspondence," not the contract, and did not request verification of delivery locations. (R4, tab 8 at 17)

12. The MFR included as attachments a series of three emails between the contracting officer and appellant from the afternoon of November 30, 2011. According to the emails, on that date appellant informed the contracting officer that it would not be possible to perform the work at the project site due to "security condition[s]" discovered by its engineer, and for that reason it wished to modify its "quotation." The contracting officer refused appellant's request, noting that the "location of this delivery was clearly spelled out in the solicitation. You were made fully aware of the location." He also reminded appellant that "the solicitation clearly stated that security is the responsibility of the contractor," and advised appellant that if it did not inform the Army of its intent to honor "this contract" by that evening, he would begin termination procedures. Appellant replied shortly thereafter, stating "We are very sorry for taking your time for this project and so we are ready with yours to terminate the project." (R4, tab 3 at 2-3) The MFR concludes with the contracting officer stating that the "contract is being cancelled at no cost to the government because the contractor never signed the contract and never delivered any gravel" (*id.* at 1).

3

13. The parties thereafter executed bilateral Modification No. P00001 (Mod 1) dated December 1, 2011, which stated as follows:

> 1) The purpose of this modification is to cancel this contract at no cost to the Government due to the contractor['s] written refusal to honor their quote and accept the Government's terms and conditions.
> 2) In accordance with 13.004(c), the Government may withdraw its offer at any time before acceptance.
> 3) As of 1 December 2011, the items in this purchase order have not been delivered to, or accepted by, the Government.
> 4) As a result of this cancellation, the order amount is reduced to $0.
> 5) The offeror's signature on this modification serves as written confirmation that NO costs have been incurred by the offeror.

(R4, tab 4 at 1) Mod 1 was signed by the contracting officer on behalf of the Army, and an individual identified as appellant's vice president on behalf of appellant (*id.*).

14. By email dated January 18, 2017, appellant submitted a certified claim[1] for $1,595,632.50 to the Army Contract Command, Close-out Contracting Branch in Rock Island, Illinois (ACC-RI). In its claim, appellant noted that the Army's November 23, 2011 email "clearly stated that [r]eceipt of this notification serves as the notice to proceed (NTP) for this contract." Appellant's claim further stated that in order to "commence delivery timely," on November 24, 2011, it purchased the gravel, but that notwithstanding that purchase, the Army contracting officer terminated the contract. (R4, tab 9 at 6)

15. In a separate email of the same date, appellant submitted to the ACC-RI contracting officer (closeout contracting officer) a copy of a receipt which it alleged reflected its purchase of the gravel (R4, tab 8 at 18). That receipt has not been translated into English. The email also forwarded a complete copy of the contract that includes what appears to the signature of the same individual who signed Mod 1, appellant's vice president, in the signature block for offerors/contractors, with a signature date of November 23, 2011 (*id.* at 4).

16. By letter dated March 13, 2017, the closeout contracting officer denied appellant's claim. She stated that although appellant requested permission to submit a revised quotation due to security concerns, CLIN 5 assigned sole responsibility for all

---

[1] Although the original claim certification was defective, appellant later submitted a corrected certification that fully complies with CDA § 7103(b) (*see* Bd. corr. email dtd. April 27, 2017).

4

security to the contractor. She then pointed to the language in the December 1, 2011 modification "cancell[ing] the contract at no cost to the Government due to [appellant's] refusal to honor its quote and accept the contract terms and conditions," and noted that appellant's signature on the modification confirmed that it had incurred no costs. (R4, tab 11 at 7-8)

17. Appellant filed its notice of appeal with the Board by email dated March 17, 2017. The notice of appeal is virtually identical to appellant's claim, noting again that the Army issued a "notice to proceed (NTP) for this contract" on November 23, 2011, and that "to commence delivery timely," appellant purchased the gravel the following day. Appellant's complaint, filed by email dated March 18, 2017, also points to the NTP and appellant's subsequent purchase of the gravel "to commence delivery timely."

## DECISION

The Army has moved to dismiss for failure to state a claim upon which relief can be granted, arguing that appellant has failed to establish the existence of a contract. In the alternative, the Army argues that even if the Board finds that a contract existed, the Army is entitled to summary judgment as a matter of law because Mod 1 constitutes an accord and satisfaction. In response to the Army's motion, appellant asserts that it has provided all evidence and supporting documents relevant to this appeal, including a receipt showing it paid for the gravel, and all email communications between the parties.

### Appropriate Standard of Review

A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the allegations set forth in the complaint. *See, e.g., Matcon Diamond, Inc.*, ASBCA No. 59637, 15-1 BCA ¶ 36,144 at 176,407; 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004). Citing the December 1, 2011 MFR and the events described therein, the Army argues that no contract ever existed because appellant did not return the acceptance letter, and neither furnished the services nor completed substantial performance in accordance with FAR 13.004(b) (gov't mot. at 5). Because the Army's motion relies upon matters outside the pleadings, it is appropriate to treat the motion as a motion for summary judgment rather than a motion for failure to state a claim. *Edward Hayes, as Liquidator of Base Operation Services GmbH*, ASBCA Nos. 59829, 59907, 16-1 BCA ¶ 36,412 at 177,540; *AshBritt, Inc.*, ASBCA No. 56826, 09-2 BCA ¶ 34,276 at 169,324; FED. R. CIV. P. 12(d).[2] Accordingly, we will proceed with our analysis using the standard for determining whether summary judgment is warranted.

---

[2] Ordinarily we would be required to give appellant advance notice that we intended to consider extra-pleading documents as part of our analysis. *See JRS Management v. Lynch*, 621 F. App'x 978, 982-83 (Fed. Cir. 2015). Here, however, the

5

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. *BAE Systems Southeast Shipyards Mayport LLC*, ASBCA No. 59876, 17-1 BCA ¶ 36,799 at 179,361. At the summary judgment stage we do not resolve controversies, weigh evidence or make determinations of credibility, and all reasonable inferences are drawn in favor of the non-moving party. *U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 17-1 BCA ¶ 36,710 at 178,759. A material fact is one which may affect the outcome of the case. *Id.* A genuine issue of material fact arises when the non-movant presents sufficient evidence upon which a reasonable fact-finder, drawing the requisite inferences and using the applicable evidentiary standard, could decide the issue in favor of the non-movant. *Anis Avasta Constr. Co.*, ASBCA No. 61107, 17-1 BCA ¶ 36,838 at 179,517. If significant doubt exists over any factual issue it must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

Nature of the Parties' Arrangement

The Army contends that appellant has failed to establish that a contract ever existed. Whether a contract exists is a mixed question of law and fact. *Caroline Hunt Trust Estate v. United States*, 470 F.3d 1044, 1049 (Fed. Cir. 2006). Proof that a contract exists requires evidence that there was 1) a mutual intent to be bound; 2) an unambiguous offer and acceptance; 3) consideration; and 4) actual authority on the part of the government representative to bind the government. *Anis Avasta*, 17-1 BCA ¶ 36,838 at 179,516 (citing *First Commerce Corp. v. United States*, 335 F.3d 1373, 1379-80 (Fed. Cir. 2003)). The failure to establish any one of these elements is fatal to appellant's claim. *Engineering Solutions & Products, LLC*, ASBCA No. 58633, 17-1 BCA ¶ 36,822 at 179,466. The Army focuses on the second element, arguing that no acceptance occurred because appellant never returned the acceptance letter and failed to deliver the gravel or complete substantial performance (gov't mot. at 5-6).

As we understand it, the Army's argument is premised on the contention that its solicitation was an RFQ and appellant's response thereto was a quotation. For this contention to be accurate, the acquisition must have been conducted pursuant to FAR Part 13, which governs the use of simplified acquisition procedures.[3] Although solicitations using simplified acquisition procedures may require submission of either a quotation or an offer, if the solicitation is an RFQ, the contractor's response is a quotation. *See* FAR 2.101 (definition of solicitation and offer).

---

extra-pleading documents have no bearing on the ultimate outcome of the appeal, and additional submissions addressing those matters would not affect our decision.

[3] During the relevant time period, contracting officers were permitted to use simplified procedures for commercial item contracts in amounts exceeding the simplified acquisition threshold but not exceeding $6.5 million. FAR 13.500(a) (2011).

These distinctions are essential to the Army's argument, because a quotation is not an offer and therefore cannot be accepted by the government to form a binding contract. *See* FAR 13.004(a). Instead, the offer does not arise until the government responds to the quotation by issuing a purchase order, and a contract does not come into existence unless the order is accepted by the contractor. *Id.;* FAR 2.101 (definition of purchase order). A contractor may accept a government offer "by notification to the Government, preferably in writing...by furnishing the supplies or services ordered or by proceeding with the work to the point where substantial performance has occurred." FAR 13.004(b).

Accordingly, under the Army's theory, the contract was merely a purchase order through which the Army offered to buy what was identified in a quotation submitted by appellant. If, as the Army contends, appellant never accepted the purchase order, no contract ever came into existence. Thus, critical to our analysis is the true nature of the parties' arrangement – whether it was a contract under which they were mutually bound to perform, or a purchase order that appellant never accepted. We cannot make that determination based upon the current record, however, because it is incomplete and contradictory in several respects.

To begin with, there are significant inconsistencies and omissions with respect to the arrangement's foundational documents. Despite the fact that the Army's argument applies only if the solicitation was an RFQ and appellant's response was a quotation, there is nothing in the Rule 4 file identified as either document (SOF ¶ 1). The Army's motion further obscures the issue, variously referencing "the Contract," "the Solicitation" or "the RFQ," but all citing to the same document in the Rule 4 file – a document repeatedly referred to throughout the record as a contract, but which on its face is ambiguous at best (gov't mot. at 2, 5; SOF ¶¶ 1-13). *See also BAE Systems*, 17-1 BCA ¶ 36,799 at 179,361 (contract language is clear and unambiguous when there is only one reasonable interpretation consistent with the plain meaning).

Adding to the confusion is the fact that, in describing the events leading up to the award, the Army's motion omits any discussion of what appellant submitted in response to the solicitation. As described in the motion, on November 23, 2011, the contracting officer 1) solicited a quotation from appellant; 2) signed the contract on behalf of the Army; and 3) contacted appellant by email to give it notice to proceed[4] (gov't mot. at 2-3). Notably absent from this chronology is any mention of appellant's actual submission in response to the solicitation.

---

[4] Although the Army's motion identifies the date of this email as November 24, 2011 (gov't mot. at 3), based upon the evidence in the record we believe the correct date is November 23, 2011 (SOF ¶ 2).

Another apparent inconsistency in the record relates to the Army's contention that appellant never accepted the Army's offer within the meaning of FAR 13.004. The Army's position rests entirely upon the events described in the December 1, 2011 MFR, which states that the contracting officer emailed appellant on November 28-29, 2011 requesting that appellant confirm receipt of the contract, but received no response (SOF ¶ 9). In fact, only the November 28 email appears in the record, and it contradicts that description (SOF ¶ 10).

The November 28 email does not request that appellant confirm receipt of the contract; instead, it directs appellant to contact the other Army representative as soon as possible to begin delivery, as the contract required delivery to commence within seven days of award (SOF ¶ 11). It then requests that appellant confirm receipt of the November 28 email, not the contract (*id.*). These statements do not support the Army's claim that it was still attempting to obtain a signed copy of the contract on November 28. In fact, appellant submitted a signed copy of the contract to the closeout contracting officer on January 18, 2017, which arguably constitutes evidence that in November 2011 it did provide the Army with written notification of acceptance under FAR 13.004(b). Neither the contracting officer's final decision nor the Army's motion, however, addresses that submission (SOF ¶¶ 15-16).

Finally, we note that in the November 23, 2011 email advising appellant of the award, the contracting officer stated that "[r]eceipt of this notification serves as the notice to proceed (NTP) for this contract" (SOF ¶ 2). An NTP is an order to the contractor to "'to get its equipment and men on the job and begin performing the work called for under the contract.'" *See G&S Constr., Inc.*, ASBCA No. 28677, 86-1 BCA ¶ 18,740 at 94,305 (quoting *Abbett Electric Corp. v. United States*, 142 Ct. Cl. 609, 614 (1958)). Issuance of an NTP, which obligates the contractor to begin performance, is not consistent with a purchase order, under which no performance obligation arises until after acceptance occurs and a contract is formed. *See* FAR 13.004(a) (effect of acceptance). Thus a reasonable fact-finder could infer that the Army intended to be bound by appellant's submission when in response to that submission, the Army provided appellant with an NTP. *See Anis Avasta*, 17-1 BCA ¶ 36,838 at 179,516 (where government sent contractor an NTP in response to contractor's question about lack of signature on a document, a genuine issue of material fact existed as to whether the government intended to be bound by that document).

Thus, the significant issues identified above require us to deny summary judgment on the Army's challenge to the existence of a contract. The Army alternatively has argued that if the Board finds that a contract existed, the Army is entitled to summary judgment as a matter of law because Mod 1 constituted an accord and satisfaction. Accordingly, we will address the accord and satisfaction argument.

8

## Accord and Satisfaction

Accord and satisfaction operates to discharge a claim because "'some performance other than that which was claimed to be due is accepted as full satisfaction of the claim.'" *Holland v. United States*, 621 F.3d 1366, 1377-78 (Fed. Cir. 2010) (quoting *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002)). There must be mutual agreement between the parties with the intention clearly stated and known to the contractor, *Coastal Government Services, Inc.*, ASBCA No. 50283, 99-1 BCA ¶ 30,348 at 150,088, with the best evidence of the parties' intentions being the terms of the modification. *See Whiting-Turner Contracting Company*, ASBCA No. 56319, 10-1 BCA ¶ 34,436 at 169,951.

To establish accord and satisfaction, the government must establish the following: (1) proper subject matter; (2) competent parties; (3) consideration; and (4) a meeting of the minds of the parties. *Holland*, 621 F.3d at 1382. There is no question that elements 1 and 2 of the doctrine have been satisfied. The subject matter of the contract and the modification are the same – delivery of the gravel. *Thomas Creek Lumber and Log Co. v. United States*, 36 Fed. Cl. 220, 238 (1996). In addition, there is no indication in the record that the parties negotiating and executing the modification did not have the authority necessary to bind the parties. *See Jaynes v. United States*, 75 Fed. Cl. 218, 229-30 (2007).

We also find that the third element, consideration, has been met. Consideration is "'a bargained for exchange consisting of an act, forbearance, or return promise.'" *Supply & Service Team GmbH*, ASBCA No. 59630, 17-1 BCA ¶ 36,678 at 178,602 (quoting *Carter v. United States*, 102 Fed. Cl. 61, 66 (2011)); *see* RESTATEMENT (SECOND) CONTRACTS § 71 (1981)). Here, the stated purpose of Mod 1 was to cancel the contract at no cost to the government, which operated to terminate appellant's performance obligation (SOF ¶ 13). Mod 1 further provided that by its signature appellant was confirming it incurred no costs (*id.*). The only logical inference from these terms is that the Army gave up its right to appellant's performance under the contract as consideration for appellant giving up its right to bring a claim against the Army.

With respect to the fourth element, it is clear that a meeting of the minds existed. A meeting of the minds occurs where there are "'accompanying expressions sufficient to make the [claimant] understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise.'" *Holland*, 621 F.3d at 1382 (quoting *Chesapeake & Potomac Tel. Co. of Va. v. United States*, 228 Ct. Cl. 101, 109 (1981) (internal citations omitted)). Here, when the Army refused appellant's request to modify its quotation, appellant requested that the contract be terminated, and then later signed Mod 1, which 1) explicitly provided that the cancellation was intended to be at no cost to the Army; 2) confirmed appellant incurred no costs; and 3) did not reserve any right on behalf of appellant to assert a claim

9

(SOF ¶¶ 12-13). Mod 1's intention was clearly stated and, as it was bilateral, it was known to appellant. *Coastal*, 99-1 BCA ¶ 30,348 at 150,088. Accordingly, we find that Mod 1 constitutes an accord and satisfaction barring appellant from recovery. *See Woerner Engineering, Inc.*, ASBCA No. 52248, 03-1 BCA ¶ 32,196 at 159,140 (where appellant requested contract changes, signed bilateral modifications stating that the changes were at no cost to either party and did not reserve its rights to bring other claims, modifications constituted an accord and satisfaction barring appellant's recovery).

## CONCLUSION

We grant the government's motion for summary judgment and deny the appeal.

Dated: November 6, 2018

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61096, Appeal of Ruby Emerald Construction Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10