BENNETT, Senior Circuit Judge.
 

 The decision of the United States Claims Court (Claims Court), 10 Cl.Ct. 173 (1986) (Merow, J.), granting summary judgment in favor of the government against Mingus Constructors, Inc. (Mingus), on Mingus’s claim for damages arising out of a road construction contract on the Hopi Indian Reservation in Navajo County, Arizona, is affirmed on the basis of the following opinion.
 

 BACKGROUND
 

 Mingus entered into a written construction contract with the Department of the Interior (Bureau of Indian Affairs) to construct 8.93 miles of roadway between Lupe and Oraibi, Arizona. Notice to proceed was received by Mingus on August 12, 1981, and work on the project was substantially completed ’em July 30, 1982.
 

 On July 14, 1982, Mingus sent a letter to the contracting officer which stated that the conduct of the government’s project representative toward Mingus during the job constituted “malicious harassment” and
 
 *708
 
 advised that Mingus intended to file a claim for the additional cost resulting from the harassment. On August 10, 1982, Mingus sent a second letter which reiterated its intent to file a claim and stated that review of job records indicated that Mingus had suffered losses due to work that was misrepresented by the contract documents or that was constructed outside the scope of the original design. Mingus concluded the August 10 letter by stating that it was in the process of assessing the “impact resulting from these changed conditions” and would submit a finalized cost breakdown within 2 weeks. However, the finalized cost breakdown was not submitted as promised in the letter.
 

 On October 28, 1982, the government inquired of Mingus as to the status of the Release of Claims form that it had sent to Mingus preliminary to making final payment under the contract and advised that “[y]ou may except any claims against the Government in the space provided [on the form]____ Any exceptions you make on the Release of Claims will not hold up the processing of your final payment.” The following day, Mingus executed the Release of Claims form which provided, in pertinent part—
 

 Whereas, by the terms of the [contract] entered into by the United States of America ... and the contractor [Mingus Constructors, Inc.] it is provided that after completion of all work, and prior to final payment, the contractor will furnish the United States with a release of all claims;
 

 Now, Therefore, in consideration of the above premises and the payment by the United States to the contractor of the amount now due under the contract, to wit, the sum of [$69,334.27], the contractor hereby remises, releases, and forever discharges the United States, its officers, agents, and employees, of and from all manner of debts, dues, liabilities, obligations, accounts, claims, and demands whatsoever, in law and equity, under or by virtue of the said contract except:
 

 In the space provided for exceptions, Mingus typed the following statement:
 

 Pursuant to correspondence we do intend to file a claim(s)—the amount(s) of which is undetermined at this time.
 

 Following receipt of the signed release, the final payment required under the contract was authorized on November 2, 1982. On November 5, 1982, Mingus sent a letter acknowledging its execution of the release form and seeking confirmation of its understanding that by inserting the statement on the release form, Mingus had not waived its rights to claims in the process of being prepared. The contracting officer responded on November 10, 1982, by stating that “[y]ou may except any claims against the Government in the space provided on the release of claims form without waiving your right to submit certified, detailed claim [sic] at a later date.”
 

 Mingus made Freedom of Information Act requests on January 7, 1983, and February 18, 1983, seeking information and documents relating to the contract for use in the preparation of its formal claim. On June 22, 1983, Mingus wrote the contracting officer requesting a time extension on the submission of its formal written claim until July 31, 1983. On July 14, 1983, the contracting officer responded to the letter by denying the request for an extension. The contracting officer noted that, since Mingus’s July 14, 1982 letter indicating an intent to file a claim, “nothing in the way of a written cost claim and detailed data in support thereof” had been submitted and concluded—
 

 Time frames for submitting cost claims by the contractor which are set forth in the contract under each pertinent clause, governs [sic].
 

 In view of the time elapsed and the lack of organic documents supporting your intended claim, the Contracting Officer hereby determines that no claim exists under this contract.
 

 Mingus submitted its certified claim on January 5, 1984. The claim was returned on February 8, 1984, without action by the contracting officer. The reasons given were that it was untimely received, the contract required claims to be made before final payment, and no “claim” as defined in
 
 *709
 
 the Disputes section of the contract
 
 [1]
 
 had been submitted by the time of final payment. The contracting officer noted that when no claim had been submitted in the year following the notice of intent to make a claim, a unilateral decision had been made that no claim existed under the contract.
 

 Mingus filed a petition in the Claims Court on June 19, 1984, pursuant to the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601-613 (1982), seeking an equitable adjustment to the contract price for changes, constructive changes, differing site conditions, defective specifications, delays, and government interference with the contractor’s performance. Damages in the sum of $1,081,273.95 were sought. The government filed a motion for summary judgment asserting that the plaintiff's claims were barred by the release executed on October 29, 1982, by its failure to give notice under the applicable contract provisions, and by its failure to assert a claim prior to final payment. Mingus filed a motion for partial summary judgment 6 days later, arguing that there were no issues of material fact and seeking to foreclose the defenses of lack of notice, untimely submission of the claims, release, and accord and satisfaction.
 

 The Claims Court held in favor of the government. It observed that the asserted claims were governed by several contract clauses which contained notice provisions and limitations periods which claims brought under the clauses had to meet. The court ruled that none of the claims asserted in Mingus’s complaint was submitted to the contracting officer prior to the final payment and that payment to the contractor by the government barred consideration of any subsequent claims for damages under the contract. 10 Cl.Ct. at 177. The Claims Court rejected Mingus’s argument that the exception made on the general release was sufficient to put the government on notice as to specific claims.
 
 Id.
 
 at 178. Finally, the Claims Court held that the defendant had established that the government would be prejudiced to a degree warranting the barring of plaintiff’s claims as untimely.
 
 Id.
 
 Therefore, the Claims Court concluded that no issue of material fact existed and granted summary judgment to the government as a matter of law.
 
 [2]
 

 OPINION
 

 I.
 

 Mingus urges on this appeal that the case be remanded to the Claims Court for trial on the merits because numerous factual disputes remain. In reviewing the granting of a summary judgment by a trial court, an appellate court determine for itself whether the standards for summary judgment have been met and is not bound by the trial court’s ruling that there was no material factual dispute present in the case.
 
 Armco, Inc. v. Cyclops Corp.,
 
 791 F.2d 147, 149 (Fed.Cir.1986). Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.
 
 Id.;
 
 Fed.R.Civ.P. 56; U.S. Cl.Ct.R. 56. The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment.
 
 United States v. Diebold, Inc.,
 
 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962);
 
 SRI International v. Matsushita Electric Corp.,
 
 775 F.2d 1107, 1116 (Fed.Cir.1985). However, the party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory state
 
 *710
 
 ments are not sufficient.
 
 Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,
 
 731 F.2d 831, 836 (Fed.Cir.1984).
 

 The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.
 
 See, e.g., Houghton v. Foremost Financial Services Corp.,
 
 724 F.2d 112, 114 (10th Cir.1983). Rather, the court must evaluate each party’s motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.
 
 See Schwabenbauer v. Board of Education,
 
 667 F.2d 305, 313-14 (2d Cir.1981). The party against which summary judgment is granted is not estopped by the filing of its own motion for summary judgment from asserting on review that there are genuine issues of material fact which prevent entry of judgment as a matter of law against it.
 
 See Zook v. Brown,
 
 748 F.2d 1161, 1166 (7th Cir.1984);
 
 Schwabenbauer,
 
 667 F.2d at 313. As observed in
 
 Nafco Oil & Gas, Inc. v. Appleman,
 
 380 F.2d 323, 324-25 (10th Cir.1967), “[t]his must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary’s theory is adopted.” On the other hand where, as here, Mingus cross-moved for partial summary judgment on the identical issues on which the government had moved for summary judgment and asserted that there were no disputed material facts relating to those issues, that claim bears upon and makes suspect Mingus’s present contention that there were disputed factual questions. With these guidelines in mind, we review the Claims Court’s grant of summary judgment in favor of the government in a light most favorable to Mingus to determine whether there are any remaining disputes as to material facts necessary to the decision.
 

 II.
 

 The construction contract executed by the government and Mingus covering the road project in question contained the following clause in both the “Changes” section (provision 3(f)) and the “Differing Site Conditions” section (provision 4(c))—
 

 No claim by the Contractor for an equitable adjustment hereunder shall be allowed if asserted after final payment under this contract.
 
 [3]
 

 As noted by the Claims Court, final payment’to the contractor by the government bars consideration of any claims for damages under the contract which are submitted subsequent to the final payment.
 
 See, e.g., Jo-Bar Manufacturing Corp. v. United States,
 
 535 F.2d 62, 210 Ct.Cl. 149 (1976);
 
 Specialty Assembling & Packing Co. v. United States,
 
 355 F.2d 554, 570, 174 Ct.Cl. 153 (1966). This is so because, under the terms of the contract, the government releases final amounts due under the contract only upon execution of a release by the contractor of all claims against the government, except those specifically excepted. If there are outstanding claims excepted on the release, then final payment will not necessarily bar resolution of those claims. If there are no claims excepted on the release or if the “claims” excepted on the release are not legally cognizable as claims, then the final payment will act as a bar to their subsequent submittal on the basis of the release signed by the contractor.
 

 Thus, the final payment acts as a bar under circumstances as exist in the present case because of the release executed by the contractor.
 
 [4]
 
 In order for “final payment”
 
 *711
 
 to have occurred so as to bar subsequently-submitted claims, it must be determined that no “claim” had been outstanding and excepted in the release accompanying the alleged final payment. The pertinent issue here is whether Mingus submitted and excepted from the October 29 release any legally cognizable claims prior to the final payment executed on November 2, 1982. Only when that question is answered can it be determined whether that payment was the final payment with respect to those claims.
 

 Unlike the Claims Court, we decide directly whether Mingus’s asserted claims were barred by the release exacted on October 29,1982. As we stated, the release is what bars the submission of subsequent claims and the effect of the release depends upon whether what was excepted on the release was adequate to constitute a “claim” under the contract. Furthermore, to the extent that the Claims Court relied on the prejudice to the government as an independent ground for its decision, we disagree. The delay in the assertion of a claim by a contractor inevitably causes some degree of prejudice to the government; however, the existence of prejudice resulting from the dilatory notice usually serves to increase the burden of persuasion facing the contractor asserting its claim for equitable adjustment rather than to bar its claim entirely.
 
 See B-W Construction Co. v. United States,
 
 100 Ct.Cl. 227, 236 (1943);
 
 Gulf & Western, Inc.,
 
 6 Cl.Ct. at 756 (and cases cited therein). Under proper circumstances prejudice to a party could be so overwhelming so as to permit entry of judgment in favor of the prejudiced party as a matter of law.
 
 Cf. Eggers & Higgins v. United States,
 
 403 F.2d 225, 185 Ct.Cl. 765 (1968) (dismissing delay claim prior to hearing on the merits in view of substantial prejudice resulting from 5-year delay in filing). However, we do not believe that the case before us presents such a situation.
 

 Nevertheless, this court reviews judgments, not opinions.
 
 Milliken Research Corp. v. Dan River, Inc.,
 
 739 F.2d 587, 593 (Fed.Cir.1984);
 
 Stratoflex, Inc. v. Aeroquip Corp.,
 
 713 F.2d 1530, 1540 (Fed.Cir. 1983). We read the entirety of the Claims Court opinion as ruling that the exception inserted on the release by Mingus was legally insufficient to preserve its claims.
 
 [5]
 
 In the present case the evidence on prejudice is uncontroverted and any resulting increased burden of persuasion on the contractor can be considered in the context of the review of the summary judgment.
 
 See Anderson v. Liberty Lobby, Inc.,
 
 — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Since an appellate court determines for itself whether the standards for summary judgment have been met, the Claims Court’s statements do not hinder our review of whether summary judgment was proper in this ease.
 

 III.
 

 The “Payments to Contractor” section (Clause No. 7) of the contract in the present case contained the following provision—
 

 (f) Upon completion and acceptance of all work, the amount due the Contractor under this contract shall be paid upon the presentation of a properly executed voucher and after the Contractor has furnished the Government with a release of all claims against the Government, arising by virtue of this contract,
 
 other than claims in stated amounts as may be specifically excepted
 
 by the Contractor from the operation of the release. (Emphasis added.)
 

 The deficiency of the exception to the release in the present case is strikingly illustrated by the decision in
 
 H.L. C. & Associates Construction Co. v. United States,
 
 367 F.2d 586, 176 Ct.Cl. 285 (1966). In
 
 H.L.C. & Associates,
 
 the contractor at
 
 *712
 
 tached a reservation
 
 [6]
 
 to a release executed prior to final payment under a building construction contract with the government. The contractor subsequently sought an equitable adjustment under the Changes article of the construction contract for a wiring change involving substitution of 3-wire conductors for 2-wire conductors in the constructed buildings. The construction contract involved there had one significant difference from the one in the present case. In
 
 H.L.C. & Associates,
 
 the requirement of a release from the contractor before final payment by the government was discretionary on the part of the government.
 
 [7]
 
 The Court of Claims, upon cross-motions for summary judgment by the government and the contractor, ruled that since the release was not mandatory under the terms of the contract it was ineffective to release the wiring claim of the contractor.
 

 Having elected to require the release, [the government] had the further authority, under the terms of the contract, to withhold the final payment upon the failure of the contractor to tender a release which was in conformity with the contract requirement. The release tendered by the contractor in this case not only did not meet the contract requirement; it was so broad as to make the release virtually meaningless. The contracting agency nevertheless accepted it and made the final payment.
 

 Logic compels the conclusion that, under the circumstances, the contracting agency simply went through the motions of observing the form of the release requirement, but in doing so waived the substance. It accepted a release which released nothing.
 

 Id.
 
 at 593.
 

 The Court of Claims reached that result only because the requirement of a release from the contractor was discretionary with the government under the terms of the contract involved in that case. Earlier, the court had observed that the exception on the release would not have complied with the contract requirements.
 

 The fact is plain, from the merest perusal of the blunderbuss exception reserved by plaintiff in the release ... that the wiring claim was not
 
 specifically
 
 delineated, either as to substance or amount. The contract provision, under which the release was required, stipulates the reservation only of “such claims ... as may be specifically excepted ... in amounts stated____”
 

 If consideration of the controversy is halted at this point, plaintiff has simply failed to abide by the contract requirements and cannot now be heard to complain of its own ineptitude.
 

 Id.
 
 at 592. (Emphasis in original.)
 

 Consideration of our own controversy could be halted at this point since the contract executed by Mingus and the government does not contain the phrase “if required” in its “Payments to Contractor” clause, as was present in
 
 H.L. C. & Associates.
 
 The elimination of the discretionary aspect of the release requirement in the “Payments to Contractor” clause, through deletion of the “if required” phrase, is a clear indication that the burden is no longer on the government to assure that the release is sufficiently specific, but is on the
 
 *713
 
 contractor to make adequate exceptions on the release form prior to receiving final payment in order to preserve his claims. Since the information regarding any unresolved claims against the government lies with the contractor, common sense indicates that placing the burden on the contractor to identify and specify such claims clearly in the release is proper.
 
 See Inland Empire Builders, Inc. v. United States,
 
 424 F.2d 1370, 1376, 191 Ct.Cl. 742 (1970) (“When, in accordance with contract provisions, execution of a release is called for, a determination whether there are any unresolved differences between the contracting parties, and a delineation of any such differences, are legitimate and desirable ends.”).
 

 In this case, the terms of the exception, construed as they must be in a light most favorable to Mingus, are too broad to constitute a “claim” under the terms of the contract. As noted above, Mingus executed its release after inserting the phrase “[p]ursuant to correspondence we do intend to file a claim(s)—the amount(s) of which is undetermined at this time.” The correspondence referred to in the exception are the letters of July 14,1982, and August 10, 1982; however, even incorporating those letters into the exception, the content of the letters and therefore of the exception does not demonstrate that a “claim,” as defined by the contract terms, was pending at the time of the payment of November 2, 1982. Mingus has submitted no other evidence that indicates that the government was provided any further information regarding the intended claims other than what was in the letters.
 
 [8]
 
 Simply stated, Mingus failed to comply with the contract requirement that reserved claims be “in stated amounts as may be specifically excepted ... from the operation of the release” or that claims be “a written demand or assertion ... seeking, as a legal right, the payment of money ... or other relief, arising under or relating to [the] contract.”
 

 Exceptions to releases are strictly construed against the contractor. As in
 
 H.L.C. & Associates,
 
 the exception noted by Mingus on its release, even as supplemented by reference to its prior letters, is nothing more than a “blunderbuss exception” which does nothing to inform the government as to the source, substance, or scope of the contractor’s specific contentions. Vague, broad exceptions as used by the contractor in
 
 H.L. C. & Associates
 
 and by Mingus in the present case are insufficient as a matter of law to constitute “claims” sufficient to be excluded from the required release.
 
 See Vann v. United States,
 
 420 F.2d 968, 972, 190 Ct.Cl. 546 (1970) (a claim not specifically delineated in an exception to a release is thereafter barred).
 

 The rationale behind construing exceptions in releases narrowly is that the purpose of a release is to put an end to the matter in controversy. Appellants rely on the statement in the
 
 Jo-Bar Manufacturing
 
 case that “prior to final payment, the contractor must ‘manifest his present intention to seek recovery under a claim of right.’ ” 535 F.2d at 66 (citations omitted). However, the Court of Claims in that case affirmed a finding that the contractor had not even adequately manifested an intent to assert a claim; any extension of the opinion’s language beyond what was needed to decide the facts of that case is properly characterized as dicta. Furthermore, there was no issue of the effect of a signed release in that case.
 

 We do not interpret
 
 Jo-Bar Manufacturing
 
 as allowing assertion of a claim merely on the basis of intent alone. To accept that premise would enable contractors to assert no more than a naked intention to file an indeterminate future claim in an undetermined amount as a precursor to subsequent development of arguable and previously unknown claims. Uncertainty and litigation would be thereby increased and the timely, orderly administration of
 
 *714
 
 contracts would be greatly diminished. Furthermore, we agree with the Claims Court that the circumstances of this case do not fall within any of the special and limited circumstances under which a claim can be considered despite the execution of a release. 10 Cl.Ct. at 177 n. 2;
 
 see J.G. Watts Construction Co. v. United States,
 
 161 Ct.Cl. 801, 806-07 (1963). Specifically, we do not consider the contracting officer’s responsive letter of November 10 reiterating the general method for excepting claims on a release to constitute plain conduct indicating a post-release consideration of Mingus’s claims.
 
 See Winn-Senter Construction Co. v. United States, 75
 
 F.Supp. 255, 260, 110 Ct.Cl. 34 (1948). Nor are there facts alleged which indicate circumstances of economic duress, fraud, or mutual mistake.
 
 See J.G. Watts,
 
 161 Ct.Cl. at 806-07 (and cases cited therein). Finally, there are insufficient grounds for rescission of the release on the basis of a unilateral mistake by Mingus.
 
 See G.M. Shupe, Inc. v. United States,
 
 5 Cl.Ct. 662, 675 & n. 2 (1984).
 

 Our holding should not be read to require contractors to have their final, certified claim prepared and submitted prior to executing the release required to receive their final payment. But as the Court of Claims observed in
 
 Adler Construction Co. v. United States,
 
 423 F.2d 1362, 1364, 191 Ct.Cl. 607 (1970),
 
 cert. denied,
 
 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971), a ease involving claims due to changed conditions and related delays not included in the exceptions to a release signed by the contractor— The failure by the contractor to keep adequate records to at least know the source and the amounts of its cost overruns is not a sufficient reason to entertain suits on claims otherwise released, especially when the terms of the contract require such information on the mandatory release at the end of the project.
 
 See G.M. Shupe, Inc., 5
 
 Cl.Ct. at 675 n. 2.
 
 See also Johnson, Drake & Piper, Inc. v. United States,
 
 531 F.2d 1037, 1047-48, 209 Ct.Cl. 313 (1976). Thus, if at the conclusion of the contract the contractor is left with the feeling that he has incurred unjustified costs, the contractor should investigate the existing facts before signing the required release, rather than merely listing on the release a vague intention to file a claim.
 

 The time to have reserved such claims was upon the execution of the release____ Plaintiff’s contentions now urged that he lacked sufficient information at the time of the release to frame proper exceptions to reserve his present claims, and that he obtained the necessary data only in the course of discovery proceedings in this action, do not excuse his failure to state his exceptions covering his present claims in general terms which would have sufficed the purpose of preserving his right to pursue them.
 

 Under the terms of the contract in the present case, it is clear that stating the claims in general terms for the purpose of preserving the right to pursue them required that specific claims be excepted in stated amounts. To the extent that other tribunals, whose decisions are not binding on this court, have stated that it is not necessary to describe the substance of the claim or the amount demanded,
 
 see, e.g., Machinery Associates, Inc.,
 
 ASBCA No. 14510, 72-2 BCA ¶ 9476, at 44,141;
 
 Discon Corporation,
 
 ASBCA No. 15981, 71-2 BCA ¶ 9069, at 42,066, we decline to adopt their reasoning. Such cases can be further distinguished as either involving one of the exceptions noted in the
 
 J.G. Watts
 
 case or as not involving the combination of mandatory contract terms and circumstances involved in the present case.
 

 Nor can it be said that the letters sent by Mingus themselves were “claims” as defined by the contract. They do not demand or assert as a legal right the payment of stated amounts of money.
 
 See Contract Cleaning Maintenance, Inc. v. United States,
 
 811 F.2d 586, 592-93 (Fed. Cir.1987);
 
 Tecom, Inc. v. United States,
 
 732 F.2d 935, 937 (Fed.Cir.1984). They do not request a decision from the contracting officer nor could they.
 
 See Hoffman Construction Co. v. United States, 7
 
 Cl.Ct. 518, 525 (1985). To find the letters or the exception itself to be sufficient to put the
 
 *715
 
 government on notice of specific claims and their amounts would be tantamount to rewriting the terms of the contract.
 
 See Specialty Assembling and Packing Co. v. United States,
 
 298 F.2d 794, 796, 156 Ct.Cl. 252 (1962). This we will not do. We conclude that the judgment of the Claims Court that the failure to submit specific claims in stated amounts prior to the final payment, all as required by the contract, entitles the government to summary judgment as a matter of law.
 
 [9]
 

 The parties will bear their own costs.
 

 AFFIRMED
 

 [1]
 

 . The contract between the parties, in the “Disputes” section (Clause No. 6), contained the following provisions—
 

 (c)(i) As used herein, “claim" means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.
 

 (iii) A claim by the contractor shall be made in writing and submitted to the contracting officer for decision.
 

 [2]
 

 . The Claims Court stated that it did not decide the issue of whether the language contained in the release was sufficient to except the claims subsequently submitted. 10 Cl.Ct. at 178 n. 4.
 

 [3]
 

 . The "Suspension of Work” section (provision 17(c)) had a similar provision which stated that "[n]o claim under this clause shall be allowed ... unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination ... but not later than the date of final payment under the contract.”
 

 [4]
 

 . In cases where the last payment occurs without the execution of a release, it may be necessary to look to the surrounding facts and circumstances to determine whether the final payment which bars subsequent claims has taken place.
 
 Cf. Gulf & Western Industries, Inc. v. United States,
 
 6 Cl.Ct. 742 (1984) (court looked
 
 *711
 
 to the totality of the facts and circumstances to determine when final payment had occurred where the contractor had executed no release relative to the portion of the contract at issue).
 

 [5]
 

 . The Claims Court implicitly determined this when it noted that “[g]iven the lack of requisite specificity, in all probability the specific claims were not adequately excepted." 10 Cl.Ct. at 178 n. 4.
 

 [6]
 

 . The following reservation was attached to the release as Exhibit A:
 

 The Eligible Builder reserves the right to assert claims against the United States ... in the amount of $500,000.00 for damages suffered by the Eligible Builder ... due to, but not limited to, damages caused by the Department of the Navy by the daily, constant, continuous, arbitrary and unreasonable interference with and disruption of the work of the Eligible Builder under said contract, the arbitrary rejection of work and materials of the Eligible Builder although said work and materials complied with the standards of work-
 

 manship and quality of materials required under the plans and specifications and said Housing Contract, all of which caused undue and unnecessary increased costs to the Eligible Builder and other damages in the performance of the contract by the Eligible Builder.
 

 H.L.C. & Associates,
 
 367 F.2d at 589.
 

 [7]
 

 . The contract provision there provided that "final amounts shall be payable after the ... [contractor] shall have furnished ... [the contracting agency] with a release,
 
 if
 
 required____’’ 367 F.2d at 593 (emphasis in opinion).
 

 [8]
 

 . The only other pre-release communication from Mingus was a letter sent to the government on September 7, 1982, by a consultant hired by Mingus which advised that "our office has been engaged to assist Mingus Constructors, Inc. in the matter of their intended claim." However, the letter did not further specify details of any claims or their amounts.
 

 [9]
 

 . Since we conclude that no claims were validly excepted by the release, we do not address under what circumstances, if any, the successful exception of one claim on a release might prevent final payment from barring assertion of an unrelated claim not excepted on the release.