DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| U.S. Bank National Association | ) ASBCA Nos. 62986, 63022 |
| | ) |
| Under Contract No. N00189-15-C-Z012 | ) |

APPEARANCES FOR THE APPELLANT: Jeffrey A. Belkin, Esq.
　　　　　　　　　　　　　　　　　Hannah S. McLean, Esq.
　　　　　　　　　　　　　　　　　Arabella Okwara, Esq.
　　　　　　　　　　　　　　　　　　ALSTON & BIRD, LLP
　　　　　　　　　　　　　　　　　　Atlanta, GA

APPEARANCES FOR THE GOVERNMENT: Caryl A. Potter, III, Esq.
　　　　　　　　　　　　　　　　　　Air Force Deputy Chief Trial Attorney
　　　　　　　　　　　　　　　　　Isabelle P. Cutting, Esq.
　　　　　　　　　　　　　　　　　Aaron J. Weaver, Esq.
　　　　　　　　　　　　　　　　　　Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

　　　　Pending before the Board are three motions. The United States Air Force (Air Force or government) filed a motion to dismiss the complaint of appellant, U.S. Bank National Association (US Bank) for lack of jurisdiction (gov't MTD), and a motion for partial summary judgment (gov't MSJ). US Bank concurrently filed a motion for summary judgment. At issue is US Bank's claim for approximately $1.5 million in unreimbursed third-party payments for transportation services.

　　　　The Department of Defense (DoD) uses a third-party payment system for transportation services. As explained in more detail below, after arranging for transportation services, the requesting DoD agency certifies the invoice, and then US Bank pays the commercial carrier. US Bank aggregates the payments by account (DoD entity) and submits an invoice for reimbursement to the Defense Finance Accounting Service (DFAS) on a periodic basis. The contract at issue in this appeal took effect in January 2015; however, US Bank had been performing similar services under predecessor contracts back to 1998. In early 2020, there was a software platform upgrade of the payment system necessitating a reconciliation of all payments on the existing payment platform. The reconciliation resulted in the discovery of a discrepancy of roughly $1.5 million in the account for the Defense Logistics Agency (DLA) Susquehanna.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

Resolution of the pending motions depends on a factual dispute regarding the origin of the $1.5 million discrepancy. US Bank contends, and the government does not dispute, that the discrepancy in the DLA Susquehanna account originated prior to 2003. According to US Bank, the government's payments to US Bank lacked detail on the specific invoices being reimbursed, so US Bank, with knowledge of the government, applied the First-In First-Out (FIFO) accounting convention such that US Bank applied each payment by DFAS for an account to the oldest existing balance for that account. Thus, because of the FIFO convention, the remaining balance at the conclusion of the contract is attributable to the most recent charges to the account. US Bank moves for summary judgment that it is entitled to the claimed amount pursuant to the terms of the contact. Conversely, the government contends that the $1.5 million discrepancy dates back to 2003 and is not "related to" the current contract, therefore, the Board lacks jurisdiction. The government also moves for partial summary judgment that the claim is barred by the statute of limitations.

As explained in more detail below, we deny the government's motion to dismiss and motion for partial summary judgment. We grant US Bank's motion for summary judgment in part, holding that US Bank is entitled to recover the outstanding balance, but find that the amount of the balance has not been established.

## STATEMENT OF FACTS FOR
## PURPOSES OF THE GOVERNMENT'S MOTIONS

DoD has a mandate to manage, pay, and account for transportation services. As part of this mandate, DFAS uses an automated transportation payment and accounting system called the Transportation Third Party Payment System (TPPS). TPPS is a commercial, off-the-shelf, third-party payment system. Through this system, US Bank pays commercial carriers for government-approved transportation services and DFAS reimburses the transportation payments to US Bank on behalf of federal agencies that use TPPS such as DLA. (R4, tab 3 at 4-5) US Bank has served as the TPPS contractor since 1998 under three contracts (R4, tab 5 at 2; app. supp. R4, tab 37 at 1).

On January 1, 2015, the government entered into Contract No. N00189-15-C-Z012 with US Bank for continued TPPS services (R4, tab 1 at 1, 3). The contract contemplated a one-year base period starting on January 1, 2015, with four one-year option periods, and an option to extend services by two months, ending on February 29, 2020 (*id.* at 12-13). The U.S. Transportation Command administered the contract (*id.* at 1). The contract incorporated by reference Federal Acquisition

2

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS—
COMMERCIAL ITEMS (JAN 2017) (R4, tab 1 at 13).[1]

Pursuant to the contract, US Bank was to provide the government with "an automated Transportation Third Party Payment System" (R4, tab 3 at 8). As part of this system, US Bank had to reconcile and make government-approved and directed payments to transportation service providers (TSPs) (*id.*). Specifically, US Bank had to "[m]ake payment[s] to sellers under the terms of the agreement executed between the contractor and the seller after DoD and other designated Federal Agencies' activities have executed final transaction approval in the DoD" payment system (R4, tab 3 at 10).

US Bank was required to "provide a summary invoice . . . at a minimum once per month" to the government to receive reimbursement. Summary invoices were to summarize charges by line of accounting, transportation account code, and appropriation code. (*Id.* at 8, 10)

Pursuant to FAR 52.212-4(i)(2), payment to US Bank for TPPS services was due 30 calendar days from the summary invoice availability date. US Bank was "responsible for any interest penalties accrued because system downtime [sic.], unmatched bills and/or posting invoices to an incorrect billing statement." (R4, tab 3 at 16) "Delinquent amounts and the date they were incurred" were "an integral part of the contractor billing and reimbursement process with the Government" (*id.* at 10).

US Bank asserts that, at the inception of the contract, and unknown to it, there was an existing balance of $1,575,819.40 on the account for DLA Susquehanna. US Bank "applied new payments on the Account to the existing balance . . . and all subsequent payment on the Account to new charges under the Contract. US Bank has

---

[1] The government's statement of undisputed material facts asserts that the contract contains FAR 52.212-4 CONTRACT TERMS AND CONDITIONS – COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES (MAY 2015) (gov't MSJ at 2) and US Bank did not dispute the proposed finding (app. stmt. of genuine issues at 3). However, the contract in the Rule 4 file actually incorporates by reference the January 2017 version of FAR 52.212-4. In addition, the contract references a September 2017 Performance Work Statement (R4, tab 1 at 16). Given that the contract was signed in December 2014, and does not include any amendments, it appears that the contract is at best, incomplete. The version of FAR 52.212-4 is not relevant to our analysis; however, this calls into question the accuracy of the Rule 4 file submitted by the government.

3

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

not retained the specific TSP invoice data, as it was not contractually required to do so under its prior contracts" (gov't MSJ, attach. A at 29).

On June 26, 2016, the government informed US Bank that there existed a discrepancy between US Bank's weekly delinquency report and its monthly summary invoice for the DLA Susquehanna account. "U.S. Bank performed an initial investigation into the difference and determined this mismatch issue existed for many years." (R4, tab 5 at 3)

The TPPS contract ended by its terms on February 29, 2020. After February 2020, TPPS moved to a new electronic platform and a new contract, necessitating a final reconciliation and closeout of all accounts on the legacy TPPS system. Declaration of Cheryl D. Garcia, dated September 12, 2022 (Garcia Decl.) ¶ 28. As part of this reconciliation and closeout, US Bank determined that there was a discrepancy in the documents that it sent the government (R4, tab 5 at 4).

On March 19, 2021, the DoD established a new policy requiring all transportation accounts to be reconciled and paid in full on an annual basis (app. supp. R4, tab 37). The policy explained that the previous TPPS contracts awarded in 1998, 2004, and 2015 lacked specific timelines for reconciling and paying outstanding bills, resulting in aged and unpaid TPPS accounts (app. supp. R4, tab 37 at 1).

On March 6, 2020, US Bank submitted a certified claim seeking payment for performance of TPPS services under Contract No. N00189-15-C-Z012 in the amount of $332,720,945.55 and €9,247,063.81 and £170,517.85. The March 2020 claim stated, "the Government has not reimbursed U.S. Bank for all payments made by U.S. Bank to the carriers/TSPs in accordance with the Contract." (R4, tab 10 at 1) On March 26, 2020, US Bank submitted a statement to the government in the amount of $1,575,819.40 as an "Other Debit" to the DLA Susquehanna account (R4, tab 4 at 1). On April 1, 2020, US Bank submitted a revised claim for $99,834,250.16 and €5,375,966.03 and £136,674.15, "representing the total amount of Government-approved payments made to carriers/Transportation Service Providers ('TSPs') by U.S. Bank on behalf of and at the direction of the Government, that has not been reimbursed to U.S. Bank under the Contract and are now past due" (R4, tab 7 at 1-2). This claim sought $1,575,807.04 from the DLA Susquehanna account (app. supp. R4, tab 11 at 1). The other amounts in US Bank's claim are apparently no longer at issue.

On December 15, 2020, the government requested additional information from US Bank in support of its claims. The government requested "[t]he previous Statements and specific detail lines from each statement that total the debit adjustment of $1,575,819.40 in which U.S. Bank previously invoiced DFAS" (R4, tab 5 at 1) The

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

government also sought invoices or other documents that demonstrated DFAS was invoiced, detailing the date that the invoices were submitted, the amount billed, and proof that the invoices were submitted (*id.*; app. supp. R4, tab 14 at 2). On January 5, 2021, US Bank responded to the government's information request. US Bank stated:

> We cannot provide a breakdown of transactions to support the March 2020 debit because (i) DFAS does not provide the information necessary to tie a particular payment to a particular transaction within the Account and (ii) payments were applied against the Account on a first-in/first-out basis since inception of the Account. Based upon currently available information, we believe the genesis of this issue necessitating the debit adjustment goes back to 2003, at which time the statements began to report an incorrect rolling outstanding balance.

(R4, tab 5, at 1-2). US Bank additionally requested a "final decision that DFAS pay the outstanding balance of $1,575,816.08" from the DLA Susquehanna account (R4, tab 5 at 2).

On May 26, 2021, the government contracting officer issued a final decision on US Bank's March 6, 2020 claim, denying the claim for failure to provide sufficient documentation to substantiate the requested amount. (R4, tab 8 at 1-2) That appeal was docketed as ASBCA No. 62986. Because the final decision referenced only the March 6, 2020, claim, US Bank filed a protective notice of appeal from its April 1, 2020, revised claim, on a deemed denial basis. The September 1, 2021, notice of appeal from the April 1, 2020, claim was docketed as ASBCA No. 63022, and was consolidated with ASBCA No. 62986.

DECISION

I. Standard of Review

The government filed two separate motions: a motion to dismiss and a motion for partial summary judgment. However, the government included the same statement of facts in both motions. While the Board may consider facts beyond the pleadings to decide a jurisdictional issue in a motion to dismiss (*see L-3 Commc'ns Integrated Sys., L.P.*, ASBCA Nos. 60713, 60716, 17-1 BCA ¶ 36,865 at 179,625, 179,627), here the government's motion cites to multiple documents for non-jurisdictional facts. Accordingly, we treat the government's motion to dismiss as a motion for summary judgment. *See, e.g., Dick Pacific/GHEMM, JV*, ASBCA No. 55829, 08-2 BCA ¶ 33,937 at 167,941. In instances where we treat a motion to dismiss as a motion for

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

summary judgment, the non-moving party is entitled to an opportunity to controvert the factual allegations. However, here, we find that US Bank has already responded to the same factual allegations in responding to the government's motion for partial summary judgment. Furthermore, because we deny the government's motion to dismiss, we find that inviting US Bank to respond would just result in wasted effort.

We will grant summary judgment only if there is "no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citations omitted). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993) (citation omitted). The fact that both US Bank and the government have moved for summary judgment does not require us to grant summary judgment for one side or the other, both motions can be denied in the event that there are material factual disputes regarding each motion. *See, e.g., Mingus*, 812 F.2d at 1391.

## II. US Bank's Allegation That It Applied The FIFO Accounting Convention Creates A Material Factual Dispute

The government's motion to dismiss and its motion for partial summary judgment are both premised upon the government's position that DFAS' payments to US Bank were tied directly to specific invoices. In the government's motions, DFAS' payments reimbursed US Bank for specific invoices related to the current contract, rather than being applied to the oldest outstanding invoiced amounts. Thus, according to the government, the DFAS payments were reimbursing new invoices, and never reached back to pay off the discrepancy that existed at the start of the contract. Specifically, the government's motion to dismiss relies upon US Bank's statements in its January 2021 letter (R4, tab 5 at 2) and an interrogatory response (gov't MSJ, attach. A at 29) providing that the source of the discrepancy was in 2003 and was an existing debt at the inception of the current contract (gov't MTD at 8-9). From these

6

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

statements, the government asserts that US Bank's claim relates to a prior contract and does not relate to the contract pursuant to which US Bank filed its claim (gov't MTD at 8). Similarly, the government's motion for partial summary judgment relies upon the same statements to assert that US Bank's claim accrued more than six years prior to the date of US Bank's claim and is barred by the statute of limitations (gov't MSJ at 8-10).

However, the cited documents, standing alone, controvert the government's assertions. In its January 2021 letter, US Bank states that "payments were applied against the Account on a first-in/first-out basis since inception of the Account" (R4, tab 5 at 1-2). In its interrogatory response, US Bank similarly stated that it "applied new payments on the Account to the existing balance . . . and all subsequent payments on the Account to new charges under the Contract" (gov't MSJ, attach. A at 29). US Bank additionally demonstrated the existence of a material factual dispute by submitting the supplemental declaration of Cheryl D. Garcia, a witness with personal knowledge of US Bank's TPPS contract with the government. Ms. Garcia's supplemental declaration explains that US Bank provided statements to the government during the contract "to ensure that the Government understood that the amount due on the Account would not be reflected simply by adding the total of all invoices delivered under the Contract less all payments made since the beginning of the Contract, as a result of the balance due on the Account on day one of the Contract" (Supplemental Declaration of Cheryl D. Garcia, dated October 14, 2022 (supp. Garcia decl.) ¶ 9). Accordingly, we find that material facts are in dispute. We deny the government's motion to dismiss (treated as a motion for summary judgment), and the government's motion for partial summary judgment.

STATEMENT OF FACTS FOR
PURPOSES OF US BANK'S MOTION

US Bank submitted a statement of undisputed material facts in support of its motion for summary judgment. As US Bank, generally, does not dispute the government's proposed findings of fact,[2] we only include additional facts material to US Bank's motion.

US Bank only paid TSP Invoices that were approved for payment in the TPPS system by the contracting DoD organization (Garcia Decl., ¶ 6; *see e.g., id.* at Ex. F (summary invoices with approval certification and list of approved statements)). Each DoD organization had a unique account and account number, and US Bank delivered

---

[2] US Bank disagrees with the characterization of certain documents, but we do not find the disagreement to be material.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

to DFAS a periodic invoice (DoD Invoice) electronically via an Electronic Data Interchange (EDI) file or via Certifying Officer Manually Billed Accounting Code Transmittals (Garcia Decl. ¶ 7; *see e.g.,* app. supp. R4, tab 24 (EDI sample file)).

The DoD Invoices contained the details of every paid TSP Invoice (and associated bill of lading) organized by account, and thus by DoD organization and Accounting Installation Number (AIN), during a particular period (bi-weekly or monthly) Garcia Decl. ¶ 8; app. supp. R4, tab 24). The DoD Invoice did not contain a running balance or otherwise reflect payments made in the applicable period, but only listed those TSP Invoices paid by US Bank during that month (Garcia Decl. ¶ 9; app. supp. R4, tab 24). DFAS payments identified the particular organizational account number being paid (Garcia Decl. ¶ 10; app. supp. R4, tab 24).

The crux of the factual dispute between the parties is whether it was possible to link DFAS' payments back to the individual shipments. US Bank contends that DFAS has never provided information linking a particular payment amount to any specific TSP Invoice(s) (Garcia Decl. ¶ 10; *see, e.g., id.* at Ex. G (DFAS payment examples)). Without any tracing information at the TSP Invoice level or DoD Invoice level, and with the knowledge of the contracting officer, DFAS, and designated officials at the account level, US Bank applied each payment to the appropriate organizational account on a first-in/first-out basis (Garcia Decl. ¶ 11; *see id.* at Ex. H at 7). The parties to the contract were at all times aware that the payments would be applied to the oldest balances on an organizational account because of the absence of tracing information from DFAS at the time of payment (Garcia Decl. ¶ 13).

The government contends that US Bank received an "EDI 820" from the government for payments and that the EDI 820 reflects the EDI 810 DoD billing invoice number (gov't resp. at 3). The government contends that US Bank could "trace the TSP Invoices paid through the TPPS under the TPPS billing invoice number" (*id.*). The government attached an example of an EDI 820 to its response, but provided no additional explanation. The EDI 820 is reproduced below:

```
4246054000000173801015B*PI*4.78*4.78|REF*GC*N0018915CZ012|REF*IL*0ATQWPU|REF*VV*T
QWP4|REF*CK*79144243|REF*AX*AA|DTM*003*200116|RMR*IV*4246054000000173812FA17*PI*6
786.98*6784.18|REF*GC*N0018915CZ012|REF*IL*0ATQWED|REF*VV*TQWE4|REF*CK*79144243|
REF*AX*AA|DTM*003*191217|ADX*2.80*L6|NTE*PMT*E        G                          0030
            |NTE*PMT*--INTEREST NOTICE: 1/16/20- 1/23/20 =  7 DAY              0031
S       |NTE*PMT*@ 2.125% =    $2.80                             0032
  |REF*RB*2.125%|DTM*140*191217****RD6*200116 - 200123         |RMR*         0033
```

(gov't resp. attach. A).

8

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

In its reply, US Bank included a second supplemental declaration by Ms. Garcia (Supplemental Declaration of Cheryl D. Garcia, dated November 21, 2022 (Garcia 2nd supp. decl.)). The second supplemental declaration included an example of an EDI 820 from the Susquehanna account.[3] As is the case with the EDI 820 reproduced above, the sample EDI 820 attached to Ms. Garcia's second supplemental declaration contains an incomprehensible string of letters and numbers. However, US Bank's reply is supported by Ms. Garcia's second supplemental declaration providing a detailed explanation of each of the data segments in the EDI 820, and how that data correlate to the American National Standards Institute's Accredited Standards Committee (ASC X12) standard (Garcia 2nd Supp. Decl. ¶¶ 15-16, Ex. A). Ms. Garcia additionally explains that each EDI 820 represents multiple TSP invoice transactions (and sometimes hundreds of transactions) in a lump sum, and that the amount of the EDI 820 "rarely if ever" matches the "cumulative amount contained in a single corresponding EDI 810" (Garcia 2nd Supp. Decl. ¶ 17). We find that the government's statements of counsel, and submission of a form EDI 820 without further explanation, are insufficient to controvert US Bank's proposed finding of uncontroverted fact, supported by the declarations of a person with personal knowledge of the TPPS program.

If the DFAS payments to a particular organizational account did not equal the amounts due for such account as reflected on the DoD Invoices, the TPPS system generated a rolling balance or a rolling credit (Garcia Decl. ¶ 14). US Bank tracked any running balances and delinquencies, even if it could not specifically identify what payments were intended for any specific monthly DoD Invoice (Garcia Decl. ¶ 15). US Bank reported to DFAS, on a weekly basis, delinquencies by account for every DoD organization using the TPPS Program since the beginning of the program (each, a Delinquency Report) (Garcia Decl. ¶ 16; *see, e.g.,* Ex. I (sample weekly delinquency report); app. supp. R4, tab 18)[4].

Distinct from the DoD Invoice and the weekly delinquency reports, US Bank also provided statements in its Electronic Access System (each, a Statement) (Garcia Decl. ¶ 17; *see, e.g., id.* at Ex. J (sample US Bank statement)). Statements contained data different than the data contained in the DoD Invoices, such as a rolling balance (Garcia Decl. ¶ 18). The Statements were not official invoices under the contract;

---

[3] Ms. Garcia's supplemental declaration identified the EDI 820 attached to the government's motion as being from an unrelated Edwards Air Force base account (Garcia 2nd Supp. Decl. ¶ 19).

[4] Tab 18 contains 281 weekly delinquency reports in native file format Excel spreadsheets.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

rather, the EDI files or Certifying Officer Manually Billed Accounting Code Transmittals were the official DoD invoices under the contract (Garcia Decl. ¶ 19).

DLA Susquehanna has used the TPPS Program since its inception and used the same account for this program throughout (Garcia Decl. ¶ 21). DLA Susquehanna's account number ends in 00169 (Garcia Decl. ¶ 22; *see id.* at Ex. J). All TSP Invoices arising from services provided to DLA Susquehanna in each billing period were certified by DLA Susquehanna and approved for payment (Garcia Decl. ¶ 24; *see id.* at Exs. F, K; app. supp. R4, tab 17).[5] In certain circumstances DLA Susquehanna provided business rules that permitted automatic approval, in which case invoices were deemed approved when such rules were met, and the TSP provided the Notice of Service Completion (Garcia Decl. ¶ 25; *see id.* at Exs. B, E). If the situation did not allow for an automatic approval, upon receipt of the Notice of Service Completion, an authorized DLA Susquehanna official logged into US Bank's system and recorded an "approval" of each invoice. Only after such approval did US Bank pay such approved TSP invoices (Garcia Decl. ¶ 25; *see id.* at Exs. B, E). US Bank transmitted each of the current period's transactions related to DLA Susquehanna via the DoD Invoice to DFAS (Garcia Decl. ¶ 26). Throughout the contract, US Bank provided weekly delinquency reports to DFAS, reflecting the actual amount owed to US Bank on each account, including on the DLA Susquehanna Account (Garcia Decl. ¶ 27; *see, e.g., id.* at Ex. I (sample weekly delinquency report that includes the DLA Susquehanna Account); app. supp. R4, tab 18).

As part of the reconciliation after the close-out of the legacy platform in February 2020, US Bank determined that the amounts displayed on the "Previous Account Balance" of the monthly statement for the DLA Susquehanna Account were inconsistent with the delinquency report amount for the Susquehanna account and did not accurately reflect the difference between the amount invoiced on the DoD invoices to DLA Susquehanna Account and the payments received by US Bank from DFAS for the DLA Susquehanna Account (Garcia Decl. ¶ 28; *see id.* at Exs. I, K; app. supp. R4, tabs 17-18). The "Previous Account Balance," as displayed on the Statements, was $1,575,819.40 less than the actual amount owed to US Bank on the DLA Susquehanna Account (Garcia Decl. ¶ 29). The $1,575,819.40 discrepancy is explained by the fact that at the time of the start of the contract, DoD was not up to date on its payments under the DLA Susquehanna Account and owed $3,595,530.18 (Garcia Decl. ¶ 30).[6] Payments received by US Bank on the account following the start date of the contract

---

[5] Tab 17 contains 135 invoice detail files in native file format Excel spreadsheets.

[6] US Bank does not explain how the $3,595,530.18 deficit was reduced to $1,575,819.40. Presumably, one or more payments on the prior contract were received after the initiation of the current contract.

10

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

were applied by US Bank against the existing balance on the DLA Susquehanna Account carrying over from the prior contract (Garcia Decl. ¶ 31). After the balance on the account was cleared of unpaid transactions predating the contract, US Bank began to apply new payments to transactions on the account under the contract (Garcia Decl. ¶ 32). Since the inception of the DLA Susquehanna Account, US Bank paid $2,272,231,467.76 and received $2,270,679,936.33 in payments, resulting in the discrepancy (Garcia Decl. ¶ 33).[7] At DFAS' request, US Bank provided a report reflecting all debits and credits on the DLA Susquehanna account since August 1998, confirming that there is an outstanding amount due US Bank (Garcia Decl. ¶ 35; *see id.* at Ex. N).[8]

US Bank provided DoD with a New Settlement Benefits White Paper in July 2015 to assist the DoD in remitting transaction level payments, which would have provided US Bank with the information necessary to tie individual DFAS payments to individual TSP Invoices paid by US Bank (Garcia Decl. ¶ 39; *see id.* at Ex. P at 9). Throughout all of the discussions regarding a specific TSP Invoice payment application, DoD had never committed to modifying its tracking and payment systems to permit US Bank to tie payments to any specific TSP Invoice (Garcia Decl. ¶ 41).

### DECISION

For US Bank to recover for a breach of contract, it must establish that there is a valid contract between the parties, that the contract imposes a duty that was breached, and that US Bank was harmed by the breach. *See, e.g., San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). The government does not dispute that there is a valid contract between the parties, and that the contract imposed a duty on the government to pay US Bank for services provided pursuant to the contract (gov't resp. at 12).

The standard of review for US Bank's decision is identical to that for the government's motion. However, because resolution of US Bank's motion turns on our

---

[7] Inexplicably, the difference between these numbers is $1,551,531.43 and not $1,575,819.40, a difference, in favor of US Bank of $24,287.97.

[8] Notably, Ms. Garcia's declaration cites Exhibit N to her declaration as evidence that there is an "outstanding amount due" but does not state that the amount due is $1,575,819.40. App. supp. R4, tab 39 is a native file version of Exhibit N. Summation of the values provided in the exhibit do not match the numbers quoted by US Bank. *See also* app. reply at 13 ("The difference between these two amounts, which are not properly disputed by Respondent, results in a discrepancy.").

11

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

resolution of a factual issue, some additional discussion is appropriate. In resolving a summary judgment motion, the moving party is required to support its motion with proposed findings of uncontroverted fact that are supported by admissible evidence. Unlike a motion to dismiss, statements in a complaint or statements by counsel are not sufficient. Put more simply, the summary judgment phase is a "put-up or shut-up" moment in litigation. *See, e.g.*, *Odyssey International, Inc.* ASBCA Nos. 62062, 62279, 21-1 BCA ¶ 37,902 at 184,071. Here, US Bank complied with these procedural requirements, supporting its motion with a declaration by an individual with personal knowledge.

As noted above, this appeal centers on a factual issue – whether it is possible to link the specific DoD invoices to specific payments. The government attaches an EDI 820 to its response to US Bank's summary judgment motion (gov't resp. Attach. A). However, the government did not submit a declaration supporting its contention that it is possible to link the payments. The government's position is supported only by statements of counsel that it is possible to link the EDI 820 to specific invoices. Moreover, the statements of counsel just state that it is possible to link the payments. The government does not explain how the payments can be linked, and it is not obvious to us how the EDI 820 can be linked to an invoice, based on the sample EDI 820 provided by the government. The government also provided two US Bank sample summary invoices (gov't resp. attach. B, C). However, the government provides no explanation as to whether the EDI 820 is somehow linked to the summary invoices, and we fail to see a way to link the EDI 820 to the summary invoices.

The government further notes that it was not obligated by the contract to provide information to link a pay amount to a specific invoice (gov't reply at 3).[9] The government further cites to US Bank's proposed finding of fact that the DoD invoices "contained the details of every paid TSP invoice (an associated bill of lading) organized by account" and asserts that "it stands to reason that appellant could determine whether it was reimbursed by the government for its bi-weekly or monthly DoD Invoices, regardless of the level of detail in the DFAS payments" (gov't reply at 4). Speculation is not evidence.

Pursuant to the summary judgment standard of review, "[a] genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez and Son*, 6 F.3d at 1541 (citations omitted). Here, US Bank proposed a finding of fact

---

[9] The government's reply brief does not have page numbers. We cite to the page numbers in the .pdf file.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

that it was not possible to link DFAS' payments to specific TPPS invoices. US Bank properly supported its proposed factual finding with a declaration by Ms. Garcia, a US Bank employee with personal knowledge of the facts at issue. In response, the government provided conclusory statements of counsel that it is, in fact, possible to link the payments, and speculation that "it stands to reason" that US Bank could link the payments. However, statements of counsel are not evidence. The government additionally attached three documents to its response without any explanation of how the documents demonstrate the ability to link the payments to specific TPPS invoices. If it were possible to link the EDI 820 to specific invoices, it was incumbent upon the government to demonstrate the fact. We have reviewed the documents and fail to see how the documents could "decide the issue in favor of the nonmovant." *Id.* In contrast to the government's hand-waving, US Bank provided a detailed declaration explaining the significance of each data segment and demonstrated that the EDI 820 could not be linked to specific TPPS invoices. Accordingly, we adopt US Bank's proposed finding that it was not possible to link the DFAS payments to specific TPPS invoices. US Bank proposed an additional factual finding that it applied the FIFO accounting convention to its payments. The government did not effectively dispute that proposed finding of fact (gov't resp. at 7), and it, too, is adopted. The government also failed to controvert US Bank's demonstration that there was an outstanding balance at the start of the contact. The government argues that US Bank has not demonstrated that there are amounts due under the contract (gov't reply at 7). However, we find that US Bank has supported the proposed finding of fact on that point (Garcia Decl. ¶ 30).

The government additionally asserts that the contract "does not provide for retroactive payment of performance under other contracts (gov't reply at 7 (citing R4, tab 3 at 10)). Here, the government cites to a page of the Performance Work Statement. The cited page does not address payments for performance under the prior contract. In fact, the relevance of the cited page to the government's argument is unclear. While nothing on the cited page provides for the payments, nothing on the page prohibits the payments, either. As noted above, the government did not effectively controvert US Bank's finding of fact that it applied DFAS payments using the FIFO convention with the knowledge and acceptance of the contracting officer (gov't resp. at 3, 7). Thus, we hold that the payments were applied on a FIFO basis to outstanding amounts at the start of the contract.

Having accepted US Bank's proposed findings of fact that it was not possible to link a DFAS payment to a specific TPPS invoice, and that US Bank applied the FIFO accounting convention to an outstanding balance at the start of the contract, the only remaining question is the amount, if any, of the shortfall at the end of the contract. US Bank made proposed findings of uncontroverted fact that it only paid invoices that

13

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

had been approved in the TPPS system, and that the unreimbursed amount is $1,575,819.40 (app. mot. at 2, 7-8 n.45). Once again, US Bank properly supported its proposed findings of fact with a declaration and appropriate documentary evidence. With regard to the first element, that US Bank only paid approved invoices, US Bank included as attachment F to Ms. Garcia's declaration a printout listing each of the invoices with charges against the DLA Susquehanna account, the date, the amount, the name of the certifying official, and the date of the certification (Garcia Decl. at ex. F). In response, the government stated that it disputed the proposed finding because it was "without sufficient information to affirm that Appellant 'only paid TSP Invoices that were approved for payment in the TPPS system by the contracting DoD organization'" (gov't resp. at 2).

Upon receipt of US Bank's motion, the government could have controverted US Bank's proposed factual findings with its own declaration by an individual with personal knowledge, or with documentary evidence demonstrating an error in US Bank's evidence. Alternatively, the government could have moved for additional time to take discovery necessary to respond to the motion for summary judgment. Such a request would need to be supported by a declaration and specify the information needed and why it was not available to the non-moving party. *Odyssey*, 21-1 BCA ¶ 37,902 at 184,071. What the government could not do was to attempt to controvert US Banks' proposed findings with statements by counsel averring that it was without knowledge to admit certain proposed facts, which is what the government did here. A statement of genuine issues responding to proposed findings of uncontroverted fact is not equivalent to the answer to a complaint. In an answer, it is acceptable to deny a fact for lack of information. In a statement of genuine issues, a denial for lack of knowledge fails to controvert a properly supported proposed factual finding.

Regarding US Bank's second contention, that the unreimbursed amount totals $1,575,819.40, this proposed finding is again supported by the declaration of Ms. Garcia, and appropriate documentary evidence (Garcia Decl. ¶¶ 29, 42). Here, attachment N to Ms. Garcia's declaration is a report of all the debits and credits to the Susquehanna account during the period of the contract (Garcia Decl. at Ex. N). Once again, we find that US Bank has properly supported its proposed finding of uncontroverted fact with a declaration and supporting documentation. As noted above in the standard of review, once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc.*, 739 F.2d at 626-27. The government's response to US Bank's proposed finding number 33, setting forth the amounts paid and received for the Susquehanna account, is: "Disputed. Respondent contends that Appellant has not demonstrated evidence supported by invoices including supporting transaction item details that any sum is due

14

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

to Appellant as an amount owed on the DLA Susquehanna Account pursuant to the Contract" (gov't resp. at 7). As noted above, we find that US Bank has properly supported its proposed finding regarding the amounts in dispute. The government's response to US Bank's proposed finding does not "set forth specific facts" but, rather, just "conclusory statements or bare assertions" and therefore fails to demonstrate the existence of a material factual dispute.

Unfortunately for US Bank, this does not end our analysis. Despite finding that US Bank has supported its proposed finding that the amount in dispute is $1,575,819.40, and finding that the government has not controverted the proposed finding, we are not required to adopt uncontroverted proposed findings of fact that are internally contradictory. *See, e.g., Sternberger v. U.S.*, 401 F.2d 1012, 1016 (Ct. Cl. 1968) ("Exaggeration, inherent improbability, self-contradiction, omissions in a purportedly complete account, imprecision and errors may all breed disbelief and therefore the disregard of even uncontradicted nonopinion testimony"); *Peterson Sharpe Engineering Corp.*, ASBCA No. 18780, 77-1 BCA ¶ 12,299 at 59,203 ("this Board is not bound to accept uncontroverted testimony at its face value if it is improbable, unreasonable or questionable"). Here, US Bank asserts that the amount due is $1,575,819.40 (Garcia decl. ¶¶ 29, 42). However, the same declaration provides that the total payments, by US Bank, on the DLA Susquehanna account were $2,272,231,467.76 and the total reimbursements were $2,270,679,936.33 (Garcia Decl. at ¶ 33) resulting in a difference of $1,551,531.43. Exhibit N to Ms. Garcia's declaration calculates the amount due as $1,575,807.04 (Garcia Decl. at Ex. N at 9). US Bank's January 5, 2021 letter requests a final decision on its claim for $1,575,816.08 (R4, tab 5 at 2). Furthermore, the government calculated the difference as $1,560,531.43 (and did not share this figure with US Bank until disclosed in discovery) (Garcia Decl. at Ex. M at 9). Finally, the Board is unable to duplicate the numbers reported by US Bank in Ms. Garcia's declaration using the native file spreadsheet in tab 39 of US Bank's supplemental Rule 4 file. It appears that US Bank recognized this internal contradiction as Ms. Garcia's declaration is carefully worded to state that Exhibit N to her declaration is evidence that there is an "outstanding amount due" but without stating that the amount due is $1,575,819.40. Similarly, US Bank's reply brief states that "[t]he difference between these two amounts [in exhibit N], which are not properly disputed by Respondent, results in a discrepancy" again without stating an amount of the discrepancy (app. reply at 13). Given the internally inconsistent amounts in US Bank's proposed findings of fact, we decline to make a finding that the amount in dispute is $1,575,819.40.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

CONCLUSION

For the reasons stated above, the government's motion to dismiss, treated as a motion for summary judgment, and the government's partial motion for summary judgment are denied. US Bank's motion for summary judgment is granted in part, with the Board holding that US Bank has established entitlement to the unreimbursed payments on the DLA Susquehanna account but denying summary judgment as to the specific amount. The parties are directed to file a joint status report, within 30 days of the date of this opinion, setting forth a proposed schedule for further proceedings.

Dated: April 26, 2023

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62986, 63022, Appeals of U.S. Bank National Association, rendered in conformance with the Board's Charter.

Dated:  April 27, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

17